## BURRELL v. JEAN ET AL.

[No. 24,893. Filed February 27, 1925. Rehearing denied May 14, 1925.]

1. WILLS.—*Postponement of the vesting of estates is not favored, and the intent to do so must be clear and not arise from inference or construction.*—The law looks with disfavor on postponing the vesting of estates, and the intent so to do must be clear and not arise from inference or construction; it presumes that words postponing the estate relate to the beginning of the enjoyment and not to the vesting of an estate. p. 195.

2. WILLS.—*Remainders construed as vested absolutely rather than contingent or conditional.*—In the absence of a clear intention to the contrary, remainders will be held to be vested absolutely rather than contingent or conditional. p. 195.

3. WILLS.—*Partial intestacy will be avoided if possible in construing wills.*—In the construction of wills, partial intestacy will be avoided if possible. p. 195.

4. WILLS.—*Devise construed to give devisee all testator's interest therein, applying §3502 Burns 1926.*—Under the provisions of §3502 Burns 1926, where the language of a will evinces an intention to dispose of all his property, a devise of certain

land will be construed to pass to the devisee all of testator's interest therein.   p. 197.

5.   WILLS.—*Language referring to death of devisee construed as referring to death after testator and devise over to her children as referring to time of enjoyment of remainder and not to time of vesting thereof.*—Where a testator gave a life estate in certain land to his daughter, and then provided that "after the death of my said daughter, I give and devise said lands to her children," the death of the daughter referred to will be construed to be her death after that of the testator, and as postponing the enjoyment of the estate by the remaindermen and not the time of its vesting.   p. 197.

6.   WILLS.—*Devise held to vest a determinable fee in remainder in testator's heirs, contingent on birth of child or children to life tenant after testator's death.*—A devise to a daughter for life and remainder to her child or children, with a devise over to testator's "heirs" on the death of the life tenant leaving no child or descendant surviving her, held to vest a determinable fee in her child or children living at testator's death, but, in the absence of such child or children, vested such fee in those persons answering the description of his "heirs," contingent on the subsequent birth of a living child to the life tenant, who would take the entire fee.   p. 197.

7.   WILLS.—*Devise to daughter for life and after her death to her children, held to vest remainder in fee in life tenant's child living at testator's death, subject to diminution of share by birth of other children.*—A devise to a daughter for life and after her death to her child or children, and if she died leaving no child or descendant, then to go to testator's "heirs," gave a remainder in fee to her child where, at testator's death, the daughter had a living child, but subject to diminution of his share by the birth of a living child or children thereafter.   p. 199.

8.   DESCENT AND DISTRIBUTION.—*Remainder after life estate to daughter of testator held to vest in daughter's child alive at testator's death, and, on child's death, to descend to mother.*—Where a will gave to testator's daughter a life estate in certain land, and, after her death, the remainder to her child or children, and provided that if she died leaving no child or descendant, then to go to the testator's heirs, the remainder in fee vested in a child of life tenant alive at testator's death, and, on child's death, unmarried and without issue, descended to his mother, her interest being subject to diminution by the birth of a living child or children thereafter.   p. 200.

9.   EVIDENCE.—*Contingency of birth of child by woman can only be determined by her death.*—Contingency of birth of child to adult woman can be determined only upon her death.   p. 200.

10. DESCENT AND DISTRIBUTION.—*On death of child or children of life tenant who are remaindermen, life tenant inherits parent's share.*—On the death, intestate, unmarried and without issue, of a life tenant's child or children to whom the remainder was devised, the life tenant would inherit a parent's share. p. 200.

11. JUDGMENT.—*Plea of former adjudication sufficient without pleadings in former action.*—A plea of former adjudication which embodies therein the judgment relied on and avers facts showing that the point in issue in the instant case was adjudicated in the former action is sufficient without setting out the pleadings in the former action. p. 201.

12. JUDGMENT.—*Judgment on merits complete bar to subsequent action when same issues were or might have been adjudicated in former action.*—A judgment on the merits in a court of competent jurisdiction constitutes a bar to a subsequent action between the same parties in interest if it affirmatively appears that the same issues were or might have been, under the issues therein, completely adjudicated. p. 202.

13. JUDGMENT.—*Judgments conclusive against parties only in the character in which they sue or are sued.*—Judgments are conclusive against parties only in the character in which they sue or are sued. p. 202.

14. JUDGMENT.—*Essentials of "res judicata" stated.*—To invoke the principle of *"res judicata,"* four things must concur, namely, a suit, a final judgment, identity of subject-matter and identity of parties. p. 202.

15. JUDGMENT.—*Test of "res judicata" stated.*—The best test for determining whether a former judgment is a bar to a present action is, Will the same evidence sustain the issue tendered in both actions? p. 202.

16. JUDGMENT.—*Former judgment to construe will as to personalty not adjudication of claim as to real estate inherited from a devisee therein.*—A judgment in an action to construe certain items of a will relating to personal property could not be *res judicata* as to the interest of a devisee in a portion of the real estate devised by the same will which she claimed to inherit from another devisee, as neither the subject-matter, the issues nor the evidence was the same. p. 203.

17. JUDGMENT.—*"Consent judgment" need not be confined to the issues.*—It is not essential to the validity of a "consent judgment" that it be confined to the issues presented by the case in which it was rendered. p. 204.

18. JUDGMENT.—*Judgment by agreement not binding on parties under disability as to matters outside the issues.*—A judgment by agreement, in so far as it attempts to adjudicate matters not

within the issues, is binding only on the parties thereto capable of contracting, and, therefore, is not binding on an infant party thereto. p. 204.

19. JUDGMENT.—"Consent judgment" as to matters outside of issues not binding on minor consenting thereto.—A judgment by agreement in an action to construe certain items of a will as to personal property was not binding on an infant party thereto in so far as it attempted to adjudicate the minor's interest in real estate as a devisee under the will, as neither he nor his guardian ad litem could prejudice his rights as to matters outside the issues by consenting to a judgment attempting to adjudicate them. p. 204.

20. JUDGMENT.—"Consent judgment" by devisee of life estate not binding on devisee of fee of same real estate.—In an action to construe certain items of a will as to personal property, a devisee of a life estate in certain land, the fee of which was devised to her child or children, having no interest in the fee, could not make any agreement with reference thereto that would be binding on the fee owner, and, therefore, could not consent to a judgment relative to the fee that would be binding on him. p. 204.

21. JUDGMENT.—Judgment by agreement as to construction of devise of life estate with remainder to children of life tenant, held not transfer or waiver of expectancy as heir of remainderman.—A judgment by agreement in an action to construe the items of a will relating to personal property which set out in substantially the same terms as the will the agreement as to the construction of an item of the will devising certain real estate to a daughter of the testator for life, and the remainder to her child or children, will not be construed as a transfer or waiver of any interest or expectancy she might have as an heir of her son. p. 205.

22. JUDGMENT.—"Consent judgment" affects only existing titles and not those subsequently acquired.—A "consent judgment" as to the rights of parties in real estate, though valid as to all stipulations therein as to existing titles, does not affect those subsequently acquired. p. 205.

From Jackson Circuit Court; *John H. Edwards*, Special Judge.

Action by Maud B. Jean and others against Beldora Burrell. From a judgment for plaintiffs, the defendant appeals. (Transferred from the Appellate Court under §1357 Burns 1926, §1394 Burns 1914.) *Reversed.*

*Ward H. Watson, Sol H. Esarey, Thomas M. Honan, John M. Lewis, Smith, Remster, Hornbrook & Smith,* for appellant.

*J. Ross Robertson* and *Montgomery & Montgomery,* for appellees.

MYERS, J.—Appellant brought this action against appellees to quiet her title as a fee simple owner of certain real estate. The first paragraph of her complaint contained the ordinary allegations, and the second stated the facts in detail upon which she relied to show fee simple ownership. Issues were formed by answers and replies which were submitted to the court for trial, resulting in a judgment in favor of appellees. The overruling of appellant's demurrer to each paragraph of affirmative answer filed by certain appellees, and the overruling of her motion for a new trial are separately assigned as errors.

The ruling questions presented by this appeal may be indicated by a brief statement of the facts which appear, both from the pleadings and the evidence at the trial.

Early in the year 1887, Henry G. Smith departed this life testate, leaving as his only devisees, beneficiaries and heirs at law the appellant, a daughter, and appellee Miller, a daughter, and other children who have since died leaving the other appellees herein who are grandchildren, and one great-grandchild. The last will of Henry G. Smith was probated in the Jackson Circuit Court on February 5, 1887. That part of the will material to this controversy reads as follows: "Item 5. I will and devise to my daughter Beldora Pankey, for and during her natural life, the following real estate in Jackson County, Indiana, namely: (real estate described). And after the death of my said daughter, I give and devise said lands to her children, and if she dies leaving no child or descendant of any child surviving her, said real

estate shall be equally divided among my heirs." By other items of this will, other real estate was devised by the testator to each of his other children in practically the same language used in item 5. He also bequeathed certain personal property among his children. Some of the original items of the will were more or less modified by codicils. Item 4 of codicil 3 reads as follows: "I give and bequeath to my daughter Beldora Pankey, all of my personal property except the roan mare and except my money, accounts, notes and certificates of stock."

During the administration of the testator's estate, a question arose concerning the division of the personal property. Thereupon, the appellant in this case, on April 25, 1887, brought a proceeding against the executor in the Jackson Circuit Court asking for a construction of the will pertaining to the personal property. On August 28, 1887, this appellant, complying with an order of the Jackson Circuit Court, filed an amended complaint making all of the legatees and devisees of Henry G. Smith parties. In that complaint, founded on item 4 of codicil 3, she alleged that she was "entitled to have her title thereto declared, quieted and settled by a judgment of the court, subject always to the demands thereon for the payment of all just debts of the testator." Then follow other allegations as to the amount of the personal property of the testator and the claim of the executor and other heirs and devisees that the will in that respect was uncertain and indefinite, although, in that regard, it was definite and certain, and that "under and by virtue of the same she became the owner of the personal property in addition to other bequests and devises made to her in said will, and she therefore asks the court for a construction of said last will and testament of the decedent and that all her rights thereunder be settled and put at rest." Certain

of the defendants to that action answered, wherein they averred "that under said 9th item, the plaintiff (appellant here) will be entitled to receive one-fifth part in value, less the excess of her said real and personal property over the property received by each of the other heirs aforesaid, and defendants ask the court to construe said will so that the plaintiff receive an equal share with each of the other children, viz.: (naming them) from the estate of the said decedent and no more."

The ninth item of the will was in the nature of a residuary clause whereby the testator disposed of his undemised or unbequeathed property to his children equally, and to equalize in value bequests and advancements theretofore made to them by the testator.

On November 16, 1887, two of the defendants, one of whom was notified by publication, were called and defaulted. Three were minors, and for these a guardian *ad litem* was appointed, but no answer by such guardian is shown to have been filed. Thereafter, on January 17, 1888, in the Jackson Circuit Court, the following judgment was entered: "Come again the parties by their attorneys and by consent and agreement of the parties and upon the defaults heretofore made, the Court enters the decree following construing the last Will and Testament of Henry G. Smith, deceased. It is ordered and decreed by the Court that under and by virtue of said last Will and Testament after the payment of funeral expenses, debts and expenses of administration * * *. And that by virtue of Item 5 of said Will, Beldora Pankey is to have and to hold for and during her natural life the real estate described in said item, to-wit: (describing the real estate), and after the death of said Beldora Pankey said real estate shall descend in fee simple to her children or the descendant of any deceased child in equal shares, and if she dies

leaving no child or descendant of any child surviving her, said real estate shall be equally divided among the heirs of said testator."

At the time of the death of Henry G. Smith, Simeon Pankey, a son of this appellant, was alive, and for aught appearing, was the only child born to this appellant either before or since that time. In the year 1889, Simeon Pankey died intestate, unmarried, and without issue, leaving his mother, appellant here, as his sole and only heir at law. Hence, appellant is claiming a fee simple title to the real estate described in item 5 of the will by virtue of the laws of descent. Appellees answered by a general denial and former adjudication wherein it was averred that in a former suit to construe the will, a decree was entered to the effect that the fee simple title to the land in question descended to appellant's son only at the death of his mother. And further answering that appellant's son never acquired an indefeasible fee simple title to the real estate, and therefore appellant could not and did not acquire through him such title.

Three questions are submitted by this appeal. (1) In whom did the fee to the real estate described in item 5 vest upon the death of Henry G. Smith? (2) Was the issue in the instant case presented and decided in the former action wherein Simeon Pankey was a defendant? (3) Did the so-called "consent judgment" estop this appellant from thereafter inheriting from her son the real estate described in item 5?

An answer to the first question would seem to require that we give some attention to the will of the decedent Henry G. Smith, and especially to item 5 thereof. That item had to do with real estate only, and thereunder it is claimed by appellant that Simeon Pankey, upon the death of the testator, took the fee in remainder unconditionally. On the other hand, appellees assert that

Simeon Pankey, at most, had only a contingent or conditional fee, which was divested by his death in the lifetime of the life tenant.

All parties concede that by item 5 of the will at bar testator gave to Beldora Pankey, now Beldora Burrell, this appellant, an estate for life. The various contentions here submitted by counsel for each of the parties relate to that part of the same item wherein the testator disposed of the fee. The several conclusions drawn, based upon different meanings attributed to the wording of this will, are exceedingly persuasive that a correct result in this matter may be reached only by a resort to established rules for the construction of an ambiguous will.

For this purpose, there are many fixed rules which the court may call to its aid when the intention of the testator is not clearly expressed, or when, to give 1-3. effect to such intention, a well-established rule of law will be contravened. In the case at bar, it is only necessary that we keep in mind that "the law looks with disfavor on postponing estates, and the intent so to do must be clear and not arise from inference or construction; it presumes that words postponing the estate relate to the beginning of the enjoyment of the remainder, and not to the vesting of such an estate." In the absence of a clear intention to the contrary, it vests "remainders absolutely, rather than contingently or conditionally; partial intestacy will be avoided if possible." *Alsman* v. *Walters* (1914), 184 Ind. 565, 570; *Aldred* v. *Sylvester* (1916), 184 Ind. 542; *Busick* v. *Busick* (1917), 65 Ind. App. 655.

Appellant insists that the will in question gave Simeon Pankey a fee absolute, while appellees, by way of argument, meeting appellant's insistence, say that "Similar devises were made to each of his children and under the suggested construction if any of them died after the

testator without surviving issue, he would have died intestate as to real estate given for life to such child, since no disposition of the fee in that case would have been made"; that "the testator had no heirs in his lifetime and hence the provision that 'said real estate shall be equally divided among my heirs' has reference to a death after his own decease."

The suggestion of partial intestacy, and that the testator had no heirs in his lifetime, is submitted as evidence of intention on the part of the testator to devise a conditional fee only to appellant's children, subject to be divested in case they or their descendants did not survive her, whether she died before or after the testator. Counsel for appellees evidently had in mind a rule forbidding, if possible, a construction of a will which would result in partial intestacy. *Myers* v. *Carney* (1908), 171 Ind. 379; *Keplinger* v. *Keplinger* (1916), 185 Ind. 81; *Clark* v. *Allen* (1919), 189 Ind. 601.

Referring to the will, we find this statement: "After the payment of my debts and funeral expenses I dispose of my property as follows:" Following this statement, the first six items dispose of certain tracts of real estate specifically described, and item 5, as we have seen, and not unlike some other items devising real estate, concludes with the statement, "And after the death of my said daughter, I give and devise said lands to her children, and if she dies leaving no child or descendant of any child surviving her, said real estate shall be equally divided among my heirs."

Item 9. "The other property I may die possessed of shall be so divided among my children as to make them equal in value, taking in consideration the advancements heretofore made to them, and taking in consideration the value as fixed by me to the real estate devised to each one, as set forth in my account book, * * *. If any one or more of the above named parties shall be

dissatisfied shall take no part under this will, * * *. And the portion devised or bequeathed herein to such as are or shall be dissatisfied as aforesaid shall be equally divided among my other children."

The foregoing excerpts taken from the will evince an intention on the part of the testator to thus dispose of all of his property. If this be true, then, by stat-

4. ute, "Every devise, in terms denoting the testator's intention to devise his entire interest in all his real or personal property, shall be construed to pass all of the estate in such property, including estates for the life of another, which he was entitled to devise at his death." §3502 Burns 1926, §3123 Burns 1914, §2567 R. S. 1881.

Obviously, from the language of the will, Henry G. Smith intended to make provision for his daughter, this appellant, and for her children. She and her child, Simeon Pankey, survived the testator. Simeon Pankey, in 1889, then about eighteen years of age, died, survived by his mother who is still living. At this point, we are concerned chiefly in determining the interest of Simeon Pankey in the real estate described in item 5 upon the death of his grandfather in 1887.

If Simeon Pankey took the fee contingent on surviving his mother, the contention of appellees would seem to have merit. But such intention of the testa-

5, 6. tor must be apparent from his language and not the result of construction. For, as we have seen, and as pointed out in the case of *Alsman* v. *Walters, supra,* the law favors the vesting of remainders at the very earliest possible moment. It will serve no good purpose for us to again analyze the various cases, or to restate the rules for the construction of wills and step by step apply them to the circumstances upon which the present question is predicated. That was done in the opinion in the Alsman case. The rules of law there

applied are quite in point at this stage of this opinion. It may be well to state that the word "after," as used in the phrase "and after the death of my said daughter," under the rules to which we have referred, undoubtedly has reference to the time of survivorship and to the death of the testator in preference to the death of the first taker. It, as well as the words immediately following, standing alone as they are here, are words of postponement and pertain to the beginning of the enjoyment of the estate by the remainderman, and not to the time of vesting the interest. *Archer* v. *Jacobs* (1904), 125 Iowa 467, 101 N. W. 195; *Kinkead* v. *Ryan* (1902), 64 N. J. Eq. 454, 53 Atl. 1053; *Beatty's Admr.* v. *Montgomery's Exrx.* (1871), 21 N. J. Eq. 324. But, it is said that this line of reasoning will lead to partial intestacy, and such was not the intention of the testator. We are not unmindful of the rule that the intention of the testator to dispose of all of his estate must be upheld, if possible. Under our construction of the present will, such would be the result and partial intestacy avoided. The infirmity of appellees' propositions and argument rests upon what we regard as an erroneous assumption that the language "if she dies leaving no child or descendant of any child surviving her" means the death of the life tenant at any time without surviving children, that is to say, that such death without surviving children, whether before or after the death of the testator, can make no difference. Furthermore, counsel for appellees seem to be under the impression that the phrase "said real estate shall be equally divided among my heirs" is evidence of an intention that the interest in remainder in the real estate should not vest absolutely until the death of the life tenant. Neither of the foregoing propositions can be sustained. It is true, at the time the will was executed, the testator, in law, had no heirs, nor was the will at that time effective

for any purpose.   Not until his death did the will speak.
Hence, the words "his heirs," coupled with his name,
would not be subject to the same interpretation as would
the same words following a named devisee.   The will,
at his death, spoke as an instrument transferring prop-
erty or an interest therein by purchase to the persons
thereunder entitled to receive the same.   The words
"his heirs" were evidently used advisedly to designate
the person or persons who are called to succeed him
as owner or owners of the real estate in question by
operation of law.   Without doubt, it was the intention
of the testator that "his heirs," those who answer such
description at the time of his death, should take his
interest in the real estate as testamentary devisees and
not by inheritance.   For, in case the life tenant sur-
vived him without living children at his death, the fee
in remainder was devised to his heirs contingent upon
the birth of a child or children thereafter born to the
life tenant.   While the interest thus devised to his heirs
might be perpetual, yet it was subject to be determined
by an event expressed in the instrument creating it, and
consequently such heirs would be vested with a deter-
minable fee only.   In other words, in the present case,
at least one of two contingencies must happen before a
fee simple interest would ripen in testator's heirs: First,
death of the life tenant prior to that of the testator
without a child or children living at the time of the lat-
ter's death; or second, death of the life tenant after that
of the testator without a child or children born alive to
her after his death.

In *McIlhinny* v. *McIlhinny* (1894), 137 Ind. 411, 418,
24 L. R. A. 489, 45 Am. St. 186, it was said: "Ac-
cordingly, it has been held by this court, and so
7. ruled at common law, that a valid remainder
might be limited on a particular estate for life,
to unborn children, and, on their birth during the life

tenancy, the remainder would immediately vest. The remainder is contingent before, and vested after, the birth of the remainderman." Furthermore, in *Alsman* v. *Walters, supra,* it was held that—"Where a life estate is carved out, with a gift over to children of the life tenant, the gift not only embraces the children living at testator's death, but also all who may come into existence during the life tenancy." See, also *Coquillard* v. *Coquillard* (1916), 62 Ind. App. 489. In the instant case, the life tenant, at the time of the death of the testator, had a living child who, under the rules for the construction of wills above pointed out, we hold, was given the fee in remainder, conditioned only to the extent of having his share diminished by other children thereafter born alive to appellant.

It will not do to say that by the application of settled rules, results will follow which had not occurred to the testator. We are only concerned in brushing 8-10. aside such rules in case of an expression of a clear intention of the testator justifying such action. If he had intended that this appellant should have only a life estate in any event, or that her children should take the fee in remainder contingent upon their surviving the life tenant, he could easily have said so. We, therefore, conclude that Simeon Pankey, upon the death of Henry G. Smith, was vested with the remainder in fee to the real estate described in item 5, alienable as well as transmissible under our laws of descent, although such interest was subject to diminution in favor of a child or children after born alive to appellant. To hold otherwise would result in cutting down the interest of Simeon Pankey to an estate for life, when there is nothing in the will to warrant it. Limited to the point now being considered, and as thereon advised by the record before us, the will of Henry G. Smith gave

to appellant a life estate, and to her son, Simeon, the fee in remainder which, upon his death, descended to his mother, subject to the interest of a child or children to her born alive thereafter. And, we may here add, the contingency of appellant giving birth to another child or children .alive is determined only upon her death. *Dustin* v. *Brown* (1921), 297 Ill. 499, 130 N. E. 859. But, should one or all of such children die intestate, unmarried and without issue during the lifetime of the mother, she would inherit from such child or children a parent's share. The two estates, possession and remainder, constituted the whole estate of which the testator died seized, and the uniting of these estates in one person, as was done, is all that is required to vest the fee in such person, subject, however, in this case to the contingency above noted.

Appellees further confidently insist that if the foregoing construction of the will of Henry G. Smith be correct, appellant is barred from asserting any interest other than a life estate in the real estate in question by virtue of a judgment entered by the Jackson Circuit Court January 17, 1888, in an action wherein appellant was the sole plaintiff and certain of these appellees and others, privies to the parties to that action, were the defendants. The judgment thus relied on, in so far as the same is material here, appears in the preliminary statement of this opinion. The answers averring former adjudication were challenged by demurrers for want of facts, in that, the pleadings in the former action were not incorporated in either of these answers. Each of the answers embodied the judgment relied on, and averred facts showing that the point at issue in the instant case was formerly adjudicated between the parties to the present action. They were sufficient to withstand the demurrers. *McSweeney* v. *Carney* (1880), 72 Ind. 430;

*McCarty* v. *Kinsey* (1900), 154 Ind. 447; *Johnson* v. *Knudson-Mercer Co.* (1906), 167 Ind. 429.

Appellees contend that the interests of the several parties in the real estate devised by the Smith will was an issue adjudicated in the former suit. On the other hand, appellant insists that no such issue was tendered by either of the parties to that suit, and, therefore, the judgment, in so far as it pertains to the real estate, was *coram non judice* and void. These contentions submit the question: Was the point at issue in the case at bar adjudicated in the former suit? This question is said to be one of fact. *McSweeney* v. *Carney, supra.* A judgment, if rendered on the merits in a court of competent jurisdiction, will constitute a bar to a subsequent action between the same parties in interest, if it affirmatively appears that the present matters in issue were in the former case put in issue and tried, or might, within the issues framed, have been completely adjudicated. *Gutheil* v. *Goodrich* (1903), 160 Ind. 92; *Walb* v. *Eshelman* (1911), 176 Ind. 253; *Beveridge* v. *New York, etc., R. Co.* (1888), 112 N. Y. 1, 19 N. E. 489, 2 L. R. A. 648; *Eckert & Williams* v. *Pickel* (1882), 59 Iowa 545, 13 N. W. 708; *Cromwell* v. *Sac County* (1877), 94 U. S. 351, 24 L. Ed. 195; *Russell* v. *Place* (1876), 94 U. S. 606, 24 L. Ed. 214.

Whether the issue in the instant case was put in issue and either affirmed or denied in the former decision is a question obviously material to the rights of those who did not give their consent to the former judgment. The entire evidence submitted on this subject is the pleadings in both actions. The issues between litigants in a contested case are defined by the pleadings, and the admission of evidence is controlled by the issues. Hence, it is perfectly natural to assume that the findings upon a trial were supported by the evidence, and the judgment a judicial determina-

tion of the issues.   While every reasonable presumption will be indulged to sustain a judgment as entered, yet the rule long recognized by this court is, "that judgments are presumptively only conclusive against parties in the character in which they sue or are sued." *McBurnie* v. *Seaton* (1887), 111 Ind. 56; *Paul* v. *Barnbrook* (1914), 58 Ind. App. 607.   In these considerations, it is important to remember that:   "The party who invokes the doctrine of former adjudication must be one who tendered to the other an issue to which the latter could have demurred or pleaded."   In other words, "Ordinarily, four things must concur before the principles of *res adjudicata* can be invoked:   (1) A suit.   (2) A final judgment.   (3) Identity of subject-matter.   (4) Identity of parties." *Jones* v. *Vert* (1889), 121 Ind. 140, 16 Am. St. 379.   Another rule, and one which is said to be the best test for determining whether a former judgment is a bar to a present action, is:   Will the same identical evidence support the issue tendered in both actions?   Freeman, Judgments (4th ed.) §259; *Johnson* v. *Knudson-Mercer Co., supra.*

An examination of the pleadings in the former case will disclose a controversy involving the construction of certain items of the Smith will pertaining to the disposition of personal property only.   These items in no manner affected the interest or title of the devisees to real estate.   The real point in issue was the adjustment of the rights of the several parties in the personal estate which, in the end, amounted to a direction to the executor in the discharge of his duties in the settlement of his trust.   The issue for trial being thus fixed, it follows that evidence relative to such issue alone was or would have been admitted. In the instant case, appellant, a life tenant in possession of certain specifically described real estate, is claiming to be the owner thereof in fee or of the fee in remain-

der, not by virtue of the Smith will, but from another under our laws of descent. That was the issue alone tendered to the present appellees. Answer, former adjudication, that is to say, the thing, right or demand in the present action is the same dispute or controversy determined by the decision in the former suit. Or, in other words, the subject-matter involved was the same in both actions. It will not do to say that because the value of the property now in question may have either directly or remotely affected the former result, the interest or title to such property said to be after-acquired was in question or determined thereby. It is clear that the subject-matter is not the same, nor does it appear that the same evidence would support the issues tendered in both actions. From these conclusions, it follows that the evidence submitted in the instant case is insufficient to support the defense of former adjudication. Hence, in the absence of other considerations, the interests of the several devisees in the real estate were not determined in the former action. *Williams* v. *Harrison* (1919), 72 Ind. App. 245.

Lastly, directing our attention to the "consent judgment" pleaded by appellees as an estoppel in this action, it is enough to say that this court has many times ruled that it is not essential to the validity of a "consent judgment" that it be confined to the issues presented by the case in which it is rendered. *Fletcher* v. *Holmes* (1865), 25 Ind. 458, 463; *Indiana, Bloomington, etc., R. Co.* v. *Bird* (1888), 116 Ind. 217, 9 Am. St. 842; *Hutts* v. *Martin* (1893), 134 Ind. 587; *Lemmon* v. *Osborn* (1899), 153 Ind. 172. However, such judgment, in so far as it purports to adjudicate matters not within the issues of the cause in which it is entered, is only binding on the parties thereto capable of contracting. At the time the "consent judgment" here was rendered, Simeon Pankey was alive

and a minor. His disability was such that neither he nor his guardian *ad litem* could prejudice his interest by consenting to a judgment upon a perfunctory hearing, or, by admissions or stipulations, surrender any of his substantial rights. *Crain* v. *Parker, Admr.* (1849), 1 Ind. 374; *McEndree* v. *McEndree* (1859), 12 Ind. 97; *Richards* v. *Richards* (1861), 17 Ind. 636, 638; *Missouri Pacific R. Co.* v. *Lasca* (1909), 79 Kans. 311, 99 Pac. 616, 21 L. R. A. (N. S.) 338, 17 Ann. Cas. 605; *Kingsbury* v. *Buckner* (1890), 134 U. S. 650, 10 Sup. Ct. 638, 33 L. Ed. 1047; *Daingerfield* v. *Smith* (1887), 83 Va. 81, 1 S. E. 599; *Tennessee Coal, etc., Co.* v. *Hayes* (1892), 97 Ala. 201, 12 So. 98.

Simeon Pankey obtained his interest in the real estate in question by purchase, one of the two modes—"purchase" and "descent"—recognized by law for the acquiring of estates. His interest, as we have said, was not only alienable but descendable under our laws of descent. The life tenant, at the time the "consent judgment" was rendered, had no interest whatever in the fee, and any agreement she might make with reference to the same, without the fee owner's consent, would be ineffectual as against him for any purpose.

As we have seen, that judgment was the culmination of a controversy as to the particular personal property bequeathed to each beneficiary by the Smith will. 21, 22. It was merely a judicial approval of an agreement between the parties capable of contracting. The agreement, aside from a division of the testator's personal property specifically itemized, embodied each item of the Smith will devising real estate without material change, comment or declaration evidencing an intention that the language of this will should receive a construction other than that to which it was entitled under the law. It contains no words or stipulations from which it can be said that appellant or any of the

other parties thereto had in mind the sale, transfer or waiver of any interest or expectancy of appellant as an heir of her son, nor an intent to cut off her right to receive, in the future, through either of the modes prescribed by law, any other interest than that given to her by item 5. It was not a case where an ancestor was considering the rights and interests of those who were the natural objects of his bounty, nor was the agreement, in many respects, within the rule announced in *Eissler* v. *Hoppel* (1902), 158 Ind. 82, wherein the court upheld an agreement between heirs for the distribution of patrimony; nor was the agreement within the rule announced by any decision to our knowledge sustaining the sale or transfer by an heir of his expectant interest in his ancestor's estate. So that, as it seems to us, the force and effect of that judgment must be likened unto an ordinary quit-claim deed containing no conventional assertions intending to fix the extent of future responsibility. *Elliott* v. *Frakes* (1880), 71 Ind. 412; *Haskett* v. *Maxey* (1893), 134 Ind. 182, 189, 19 L. R. A. 379; *Graham* v. *Graham* (1876), 55 Ind. 23; *Bryan* v. *Uland* (1885), 101 Ind. 477; *Donaldson* v. *Hibner* (1874), 55 Mo. 492.

The "consent judgment" is valid, and, as to all matters covered by the stipulations therein, it will serve as an estoppel against any future controversy between the same parties. But, in the absence of anything to the contrary, we do not understand that the general rule of estoppel by judgment affects other than existing titles. It is said in *Erwin* v. *Garner* (1886), 108 Ind. 488: "The general rule is that an estoppel by judgment affects existing titles, and not those subsequently acquired. *Bryan* v. *Uland, supra,* * * * *Avery* v. *Akins,* 74 Ind. 283."

The foregoing opinion indicates the various issues tendered in the instant case. There was a general find-

ing by the trial court in favor of appellees. If it may be inferred that the trial court found in favor of appellees on one or more of the issues in this case tendered, then, as a recapitulation, we hold that the trial court's finding is unsupported by the evidence, and hence contrary to law, in that: (1) It erroneously construed the will of Henry G. Smith; (2) it erroneously found that the issue in the instant case was presented, tried and determined in the former action; (3) it erroneously found that appellant was estopped by the "consent judgment." Therefore, in any event, the judgment below must be reversed.

Judgment reversed, with instructions to the trial court to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.