**WOLF et al. v. BILSKY et al.**
No. 10013.

United States Court of Appeals
Seventh Circuit.
May 15, 1950.

870

H. K. Bachelder, William C. Bachelder, Eugene Fife, Jr., Bachelder, Bachelder & Fife, Indianapolis, Ind., for appellants.

Charles W. Cook, Jr., Indianapolis, Ind., for appellees.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

In this case the trial court adjudged that the plaintiffs take nothing by their complaint, and dismissed the same at their costs. As appellants here, the plaintiffs seek a reversal of this judgment and contend that the findings of fact made by the trial court are not supported by the evidence and that the court erred in its conclusion that the law of the case was with the defendants.

It appears that the plaintiffs are residents and citizens of the State of Illinois; they are co-partners engaged in the accounting business under the style Wolf and Company, and that the defendants are residents of Indiana, and are also co-partners.

The evidence discloses that on or about August 14, 1944, the defendants, through their attorney, employed the plaintiffs to make an examination of the books and records of a third partnership, doing business as Bennett Brothers, of Evansville, Indiana, who were engaged in promoting oil leases and disposing of interests therein, and had sold interests in said oil leases to the defendants, William F. Bilsky and Sabin L. Mitchell. Under the terms of this agreement, plaintiffs were to be paid at the rate of $5 per hour for accountants' services, plus traveling and hotel expenses including meals, and also to be paid for office time after the work in Evansville had been completed. The bills were to be mailed to the attorney for the defendants, and were to be paid monthly.

When the plaintiffs' auditors arrived at the office of Bennett Brothers, of Evansville, they found no books had been kept by that partnership. There was no general ledger, there was no record of cash receipts, there were no records of disbursements, and the accountants were therefore obliged to examine paid and unpaid invoices, to review all cancelled checks, to review cash payments made otherwise than by cancelled checks. They also found that in addition to their business in oil leases the Bennett Brothers partnership was doing business as the Bennett Brothers Distributing Company, and that the records and papers of both branches of their business were commingled and had to be separated.

It was impossible to make any final report upon the various interests in the oil leases shown by Bennett Brothers' memoranda without separating the account of each holder of an interest in each lease. The defendants had various interests in

various leases, and in some two or three of the leases the defendants had no interest at all, but this could not be discovered until after the separation of the various leases and the various interests. The work was completed on about March 17, 1945, and periodically from September until March, statements were forwarded to the defendants through their attorney. The total charges made by the plaintiffs amounted to $7,884. The defendants paid only the first invoice, and at the time of the trial it was claimed that $4,260.45 was due the plaintiffs.

After the audit was completed, plaintiffs had a conversation with the defendants and it was requested that plaintiffs allocate their fees on a pro rata basis to each of the interest holders in leases, so that the defendants could attempt to get the pro rated share of the fees from these interest holders. Some of the persons holding such interests in a meeting at Indianapolis agreed to and did actually pay part of the amount due for services rendered by the plaintiffs.

On December 7, 1945, the plaintiffs commenced a suit in the Circuit Court of Indiana, in the County of Vanderburgh, against the owners and holders in the various oil leases as a class. In the suit they sought to recover from such owners the balance due for the services claimed to have been rendered in the examination of the books of Bennett Brothers. The cause of action was subsequently transferred, on change of venue, to the Circuit Court of Indiana, in Gibson County. The defendants, William F. Bilsky and Sabin L. Mitchell, were members of the class and consequently were made parties defendant to said suit as class members.

The said cause of action was submitted to the Gibson Circuit Court without the intervention of a jury, and on February 19, 1948, that court entered its judgment for the defendants as a class. During the course of this litigation in the courts of Indiana, Bennett Brothers, in order to secure continuances for the purpose of furthering a compromise of the issues involved in the class suit, paid to the plaintiffs the sum of $750, leaving a balance due them of $4,260.45 for which the action now under review was instituted.

This case was also submitted to the court without the intervention of a jury. The record discloses that on the hearing of the action the defendants offered no testimony. The only evidence on behalf of the defendants consisted of certain exhibits which had been used by plaintiffs in the trial of their class suit in the Circuit Court of Gibson County. These exhibits were admitted by agreement. Three of them related to the separated audits of distinct oil leases disposed of by Bennett Brothers in the course of their business in which the defendants as a firm had no apparent interest. The remaining exhibits consisted of the pleadings and judgment in the Gibson County case.

At the conclusion of the hearing the trial judge gave the plaintiffs one month, or until July 15, to submit their proposed findings of fact and to file a brief on the law supporting their theory of the case. Defendants were given an additional ten days, or until July 25, in which to submit their fact findings and their argument in support of the theories of law which they believed applied to the case. Apparently the trial court adopted the findings of facts submitted by the defendants. These were naturally founded upon the defendants' theory, which was substantially that the defendants should not be held obligated to the plaintiffs for accounting services accruing because of audits or examinations of the oil leases in which they had no interest. As we have pointed out, the contract made between the plaintiffs and the attorney for the defendants, the examination and audit by the plaintiffs was to include all the books and records of Bennett Brothers and was to be paid for at the rate of $5 per hour plus travel, hotel and living expenses of the accountants involved, and also the office work required after the examination had been completed.

The only substantial point in this case involves the determination of the question: Did the decision of the Gibson County Court, which was affirmed by the Appellate Court of Indiana in Wolf et al. v. Bennett et al., 82 N.E.2d 262, finally adjudicate the

respective rights of the plaintiff and defendants to this suit?

The final order entered by the Circuit Court of Gibson County, later affirmed by the Appellate Court of Indiana in 82 N.E. 2d 262, 264, reads as follows: "And now the court finds that under the allegations and theory of the complaint herein, this action is solely a class action, and that plaintiffs proceed solely against defendants as a class, and not as individuals; and the court further finds that the plaintiffs should not recover from the defendants as a class on the complaint and supplemental complaint filed in this cause, and that a judgment should be entered against the plaintiffs and for the defendants as a class, and not as individuals. It is therefore, Ordered, Adjudged and Decreed by the Court, that the plaintiffs take nothing by their action herein, and that the costs of this action be assessed against the plaintiffs."

And on page 265 of 82 N.E.2d, the Appellate Court of Indiana said: "If the court had found that the defendants were jointly indebted to the appellants by reason of the contract of employment in suit, the ensuing judgment could have been enforced against the joint funds or other property of the class and the separate property of the appellees who were in court through due process. On the contrary the court found that there was no joint or class obligation on the part of the defendants to pay the appellees anything, and a review of the record fails to disclose any evidence that would justify any other conclusion. Under such circumstances the statute makes no provision for a personal judgment against the appellees."

In Burrell v. Jean, 196 Ind. 187, on page 203, 146 N.E. 754, on page 759, the Supreme Court of Indiana said: "While every reasonable presumption will be indulged to sustain a judgment as entered, yet the rule long recognized by this court is 'that judgments are presumptively only conclusive against parties in the character in which they sue or are sued.' McBurnie v. Seaton, 111 Ind. 56, 12 N.E. 101; Paul v. Barnbrook, 58 Ind.App. 607, 106 N.E. 425. In these considerations, it is important to remember that 'The party who invokes the doctrine of former adjudication must be one who tendered to the other an issue to which the latter could have demurred, or pleaded.' In other words: 'Ordinarily four things must concur before the principles of res adjudicata can be invoked: (1) A suit. (2) A final judgment. (3) Identity of subject-matter. (4) Identity of parties.' Jones v. Vert, 121 Ind. 140, 22 N.E. 882, 16 Am. St.Rep. 379. Another rule, and one which is said to be the best test for determining whether a former judgment is a bar to a present action is: Will the same identical evidence support the issue tendered in both actions? Freeman on Judgments (4th Ed.) § 259; Johnson v. Knudson-Mercer Co., (167 Ind. 429, 79 N.E. 367.)"

What was said by the Appellate Court of Indiana, in Wolf v. Bennett, 82 N.E.2d on page 264, is vitally important in the determination of whether or not the plea of res judicata was properly sustained by the trial court in the instant case. It was there said: "Had this suit been against Mitchell and Bilsky as individuals and without mention of a class and the members thereof the undisputed evidence would have required a judgment in the appellants' favor against both defendants for the value of the services described in the complaint."

In other words, the Appellate Court of Indiana has decided that the evidence presented in the case at bar would not support the claim that the services of plaintiffs were rendered to and should be paid for by all the holders of interests in Bennett Brothers' oil leases as a class. But, on the other hand, that court also expressed the conviction that such evidence did support and would require a judgment on a claim that such services should be paid for by the defendants as individuals.

The final and best test laid down in Burrell v. Jean does not, therefore, when applied to the facts here shown of record, make a proper case for the application of the doctrine of res judicata.

The plaintiffs also insist that they are entitled to interest on the balance due for their services as accountants from March, 1945 to date because of unreasonable delay in payment. We are not inclined

to hold that such interest should be allowed. Under the circumstances shown by this record, it appears that the greater part of the delay was due to the fact that the plaintiffs attempted to assert a claim against the leaseholders as a class. Even if the defendants counseled the bringing of such class action, we are not inclined to hold that they should be here penalized for delay occasioned thereby.

For the foregoing reasons it is ordered that the judgment entered in the District Court on August 10, 1949, be reversed, and that this cause be remanded to said court with directions to enter judgment for the plaintiffs in the sum of $4,260.45, and costs.