In the Matter of the ESTATE OF David Murton WOOLLEN, Deceased.

Earlham College, Appellant–Intervenor,

v.

Kay N. Woollen, Appellee–Petitioner and Personal Representative de Bonis Non.

No. 27A02–0112–CV–849.

Court of Appeals of Indiana.

Oct. 11, 2002.

Brent D. Taylor, Kelly S. Witte, John A. Gardner, Baker & Daniels, Indianapolis, IN, Attorneys for Appellant.

James T. Beaman, Gene R. Johnson, Johnson, Beaman & Todd, Marion, IN, Attorneys for Appellee.

## .OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Intervenor, Earlham College ("College") appeals the trial court's order concluding that certain property owned by David Murton Woollen ("testator") did not vest in his daughter as his sole heir at law at his death and become part of her estate upon her death, but reverted to his estate to be distributed to his collateral heirs upon his daughter's death.

We affirm.

### ISSUES

The College raises several issues for our review, which we restate as follows: whether the testator intended for the real estate, given to his daughter for her lifetime, to vest in her, as his sole heir at law, upon his death.

### FACTS AND PROCEDURAL HISTORY

On December 30, 1939, the testator created a will, the terms of which stated that his wife, Mary E. Woollen, was to "hold during her life time my residence property, grounds and other buildings located at # 216 W. First Street in the town of Fairmount, Indiana." (Appellant's App. p. 18). The will further provided that "[a]t the death of my wife, Mary E. Woollen ... all my property shall descend to my only child, Margaret W. Thomas ... to be held by her during her life time. At her death (if she have no blood heirs) all property shall pass in fee simple to my estate. If my daughter shall have blood heirs at her death all property shall go equitably to them." (Appellant's App. p. 18).

The testator died on September 27, 1949. On October 5, 1949, the testator's will was probated and, pursuant to the terms of the will, his wife received a life

estate in the real estate. Upon the wife's death in 1965, the testator's daughter, Margaret W. Thomas, received use of the property for her lifetime. On December 27, 1999, the daughter died, leaving no "blood heirs"; however, she had a will under which she left her entire estate to the College.

On July 28, 2000, appellee-petitioner, Kay N. Woollen, grandson to the testator's brother, filed a petition to reopen the testator's estate to complete the administration of the estate. The trial court granted Woollen's request and appointed him personal representative de bonis non. On February 13, 2001, the personal representative filed a Petition Requesting Instructions as to Interpretation and Construction of the Decedent's Will and Disposition of Estate Assets.

On April 12, 2001, the College filed a motion for leave to intervene in the reopened estate proceeding. The College contended that its intervention was necessary to enable it to establish its belief that it owned the real estate referred to in testator's will. The College's request was granted on April 24, 2001.

A hearing was held on the personal representative's petition on September 18, 2001. At the hearing, the personal representative and the testator's collateral heirs by their attorney contended that the testator had intended for his property to be held by his daughter during her lifetime. They further contended that the property was to be left to his daughter's children if she had any during her lifetime, but if she did not, the property was to revert to the testator's estate to be distributed to his collateral heirs. The attorney thus urged the court to interpret the provision in the will which stated that the property should pass in fee simple to "my estate" to mean the testator's heirs, excluding his daughter.

The College, by its attorney, contended that the real estate vested in fee simple in the testator's daughter upon his death, despite the provision in the will that stated that his daughter should hold the property for her lifetime. According to the College, the testator's "estate" was to be determined, not upon the daughter's date of death, but upon the testator's date of death in 1949. The College further contended that in 1949, his sole heir at law was his daughter. Thus, the College reasoned that when the daughter died, leaving no "blood heirs" in 1999, the real estate, which had already vested in the daughter upon the testator's death and which had not been divested by the birth of any children, became part of her estate, which the daughter left by will to the College.

Pursuant to the College's request, the trial court entered findings of fact and conclusions of law. After noting that there were no factual disputes, the trial court found that the testator had intended for the real estate to be held by his daughter for her lifetime only and that if she died without blood heirs, the real estate was to revert to the testator's estate to be distributed to his collateral heirs, including the personal representative. To give effect to the testator's intent, the trial court applied what it called the "implied exception doctrine" so that when the testator's heirs under the intestacy laws were determined in 1949, the estate included all of the testator's heirs, except for his daughter. Specifically, the trial court found as follows:

> The Personal Representative, Kay Woollen, one of [testator's] collateral heirs, argues the doctrine of "implied exception", recognized by Indiana Courts, to defeat the College's argument that reversion of [testator's] property to his estate means it ultimately was devised to [the daughter] under the laws of intestacy as a fee simple devise. The

implied exception doctrine honors the intention of the testator this way: since the clear, expressed intention of David Woollen was to keep his property in his family, the implied exception doctrine means the Court must construe his will in such a way that when his property reverted to his estate (since his sole linieal [sic] heir, [his daughter], died without "blood heirs"), then the class of heirs, recognized as of September 27, 1949, who would inherit under intestacy laws would include all of [testator's] heirs, except for [his daughter], (the "implied exception") who we now know died without "blood heirs".

(Appellant's App. pp. 9–10). The court then concluded that the property was "available for distribution to his collateral heirs as they existed at the time of [the daughter's] death." (Appellant's App. p. 10). The College now appeals.

## DISCUSSION AND DECISION

### I.  Standard of Review

▮▮▮  In this case, the College requested specific findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A). Normally, this court, in reviewing the trial court's decision, applies a two-tiered standard to ensure that the evidence supports the findings and the findings support the trial court's conclusion. *See Plan Com'n of Harrison County v. Aulbach,* 748 N.E.2d 926, 932 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* However, in this case, the trial court found, and the parties agree, that the facts are not in dispute. Thus, the only question before the trial court was the interpretation or legal effect of the will, a question which can be determined as a matter of law. *See Lutz v. Fortune,* 758 N.E.2d 77, 81 (Ind.Ct.App.

2001). Therefore, we may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998).

### II.  Testator's Intent

▮▮▮  To place the issue in context it is first necessary to understand the nature of the interests created by the testator's will. With regard to the real estate, the testator left a life estate, first to his wife and then to his daughter. At his daughter's death, the property was to pass in fee simple to his daughter's "blood heirs" and, if she had none, the property was to revert to his "estate." By devising the real estate to his daughter's blood heirs and then to his estate, if there were no blood heirs, the testator created a remainder interest in his daughter's blood heirs and an alternative remainder interest, or a remainder over, in his estate in the event the first remainder interest failed. *See Burrell v. Jean,* 196 Ind. 187, 146 N.E. 754, 757–58 (1925). According to the College, because the daughter did not have any blood heirs at the time of the testator's death,[1] the interest vested as a determinable fee in the alternative contingent remainder, the testator's "estate," subject to being divested by any blood heirs who came into existence during the daughter's lifetime. The College further contends that because the testator's only heir at law at his death in 1949 was his daughter, the interest vested solely in her in fee simple and she properly disposed of it by will at her death.

▮▮▮  Whether the daughter received a fee simple in 1949 as her father's sole heir depends first upon whether the testator intended for the real estate to vest in his estate at his death as opposed to his daughter's death. With regard to the time

1.  Had there been a "blood heir" living at the testator's death and had there been no dispute concerning time of vesting as to that remain-

der, the real estate would have vested in the "blood heir" upon the testator's death. *See Burrell,* 146 N.E. at 758.

of vesting, it has been recognized that "[i]t is undoubtedly the right of the testator ... to fix the time of vesting of any estate created by him, and the question of whether or not in a given case a particular estate or interest is vested or contingent depends, in final analysis, upon the intention of the testator as gathered from the will." *McDowell v. Fletcher,* 103 Ind.App. 165, 4 N.E.2d 577, 579 (1936), *trans. denied.* However, if the testator's intention cannot be gleaned from the written provisions of the will, the court will invoke certain rules of construction to aid it in determining the testator's intention. *Id.* Two well-established rules of construction are that the "law favors the vesting of estates at the earliest possible moment, ... in the absence of a clear manifestation of the intention of the testator to the contrary" and that "words postponing the estate are construed to refer to the beginning of the possession and enjoyment of the estate and not to the vesting thereof." *Id.*; *Moorman v. Moorman,* 156 Ind.App. 606, 297 N.E.2d 836, 838 (1973).

These rules of construction were applied in *Burrell,* 146 N.E. 754 wherein our supreme court discussed the time when a contingent remainder vests. There, the testator left his daughter a life estate in certain real estate. *Id.* at 755. The will further provided that "after the death of my said daughter, I give and devise said lands to her children, and if she dies leaving no child or descendant of any child surviving her, said real estate shall be equally divided among my heirs." *Id.* At the testator's death in 1887, the daughter had one son, who died two years later, leaving his mother as his only heir at law. *Id.* at 756. The mother argued that the remainder interest vested in fee simple in her son upon the testator's death while the testator's heirs contended that the will required the son to survive his mother before the interest vested. *Id.* at 756–57.

The court found the language used by the testator to be ambiguous and, as a result, applied the rules of construction to ascertain the testator's intent. *Id.* at 757. In particular, the court stated:

> For this purpose, there are many fixed rules which the court may call to its aid when the intention of the testator is not clearly expressed, ... In the case at bar it is only necessary that we keep in mind that "the law looks with disfavor on postponing estates, and the intent so to do, must be clear and not arise from inference or construction; it presumes that words postponing the estate relate to the beginning of the enjoyment of the remainder, and not to the vesting of such an estate." In the absence of a clear intention to the contrary, it vests "remainders absolutely, rather than contingently or conditionally;...."

*Id.* (citations omitted).

Applying the rules of construction, the court ultimately held that the interest vested in the son upon the testator's death, as the son was living at the time of the testator's death. *Id.* at 758. Specifically the court noted that the testator's use of the language "after the death of my said daughter" did not have the effect of postponing the time of vesting but only the time of enjoyment. *Id.* The court, in dicta, also noted what would have happened had there been no living children at the time of the testator's death.

> The words "his heirs" were evidently used advisedly to designate the person or persons who are called to succeed him as owner or owners of the real estate in question by operation of law. Without doubt, it was the intention of the testator that "his heirs"—those who answer such description at the time of his death—should take his interest in the real estate as testamentary devisees

and not by inheritance. *For in case the life tenant survived him without living children at his death, the fee in remainder was devised to his heirs contingent upon the birth of a child or children thereafter born to the life tenant.* While the interest thus devised to his heirs might be perpetual, yet it was subject to be determined by an event expressed in the instrument creating it, *and consequently such heirs would be vested with a determinable fee only.*

*Id.* (emphasis added).

While in *Burrell,* the court was primarily concerned with whether the interest had vested in the first remainder created and not the alternative remainder, as in our case, the court's reasoning and its dicta are particularly helpful in this case. First, the court made clear that the testator's use of the phrase "at her death" did not postpone the vesting of the remainder but only postponed enjoyment. Additionally, the court recognized, in dicta, that an alternative remainder interest would vest upon the testator's death if no contrary intent was apparent, thereby giving the "heirs" a determinable fee subject to being divested by any children born during the life tenant's lifetime.

A case that recognized the testator's intent to postpone vesting in the alternative remainder was *Chicago, I. & L. Ry. Co. v. Beisel,* 122 Ind.App. 448, 106 N.E.2d 117 (1952). There, the testator gave a life estate in certain property to his son and his wife. *Id.* at 119. Upon their deaths, the property was to pass to their children or descendants of their children, and if they had no surviving children or descendants, the property was to be sold and the proceeds divided "among my grandchildren living at such time. . . ." *Id.* at 120. The court found that the testator had created a contingent remainder, as the will required the grandchildren to be living at

the death of the life tenants in order to take under the will. *Id.* at 123. The court concluded that "[t]his interest . . . would not vest until after the happening of the condition precedent, that the devisee be living at the death of the surviving life tenant. . . ." *Id.*

In this case, the provisions of the will which created the remainder and the alternative remainder provided as follows: "At her death (if she have no blood heirs) all property shall pass in fee simple to my estate. [alternative remainder] If my daughter shall have blood heirs at her death all property shall go equitably to them. [remainder]" (Appellant's App. p. 6). While the devise to the daughter's children may have presented a question concerning the time of vesting in the daughter's children, *see Hackleman v. Hackleman,* 88 Ind.App. 204, 169 N.E. 539 (1925), *on reh'g,* the devise to the estate does not appear to contain specific language that would postpone the vesting until the daughter's date of death. *See Burrell,* 146 N.E. at 758. Stated another way, the will does not provide that at the daughter's death, the property shall pass in fee simple to the heirs of the testator then living or living at the death of the testator's daughter. Thus, it would seem that those heirs taking as the testator's "estate" would be vested as of his death in 1949. It would also seem that because the testator's daughter was his sole heir at his death, the real estate vested in her, subject to being divested by any children born during her lifetime.

Still, this court has always recognized that giving effect to the testator's intent is paramount. *See Brown v. Union Trust Co. of Greensburg,* 229 Ind. 404, 98 N.E.2d 901 (1951) (noting that the court's primary purpose is to discover the testator's intentions). Thus, there are cases which have found that, despite the lack of specific

language indicating the postponing of vesting, the testator could not have intended the life tenant to also take as the testator's heir. One such case was *Rusing v. Rusing*, 25 Ind. 63 (1865). There, the testator left his wife a life estate in his personal and real estate and further provided that upon the wife's death, the real and personal estate was to "descend equally to my heirs." *Id.* at 63–64. The widow, who was his sole heir at law at his death, elected to take a one-third interest under the law and not under the will. *Id.* at 64. As a result, the remaining two-thirds of the real estate was distributed to the testator's brother's and sister's descendants. *Id.* The widow, believing she was entitled to the real estate in fee, brought suit to quiet title in the real estate, and she was granted relief. *Id.*

On appeal, our supreme court, in determining what the testator meant by the term "my heirs," stated as follows:

> What is meant by the words "my heirs," in the clause of the will above quoted? It does not mean the widow, who under our law would be the sole heir. This is plain. By the word "heirs" more than one person must have been meant, *and besides, it would make nonsense of the will to hold that the widow was meant, for then the effect would be to give her the estate for life, and, upon her death, the remainder in fee. The nearest of kin must have been meant.*

> It follows, therefore, that when she elected to take as widow, under the law, thereby obtaining one-third of the land in fee, that the effect of the devise would be to give the remaining two-thirds, after her death, to the [testator's brother's and sister's descendants], the next of kin. . . .

*Id.* at 64–65 (emphasis added). Thus, the court was concerned with what it considered would have been an absurd result had the will been read to find that the testator's widow was the testator's heir.

The court in *Hinkle v. Woolpert*, 117 Ind.App. 431, 69 N.E.2d 598 (1946) relied upon the *Rusing* court's holding to find that the testator, who left his wife a life estate in one-hundred sixty (160) acres, did not intend to include her as his legal heir after her death.[2] The testator specifically provided that upon his wife's death, following her life estate, the executor was to sell the one-hundred sixty (160) acres and distribute the proceeds and the residue of his estate to his "legal heirs." *Id.* at 599. Although the court found that the will lacked clear and explicit language indicating that the vesting of the remainder should be postponed until the death of the life tenant, his wife, it made clear that "by the terms of the will of [the testator] his widow received a life estate only in the involved 160 acres and is not to be considered a legal heir so far as the remainder interest therein is concerned, and that the remainder interest was given to his next of kin" his nieces and nephews. *Id. See also Griffin v. Ulen*, 139 Ind. 565, 39 N.E. 254, 255 (1894) (holding that testator, who gave

---

**2.** After reviewing the Indiana Rehearing and Transfer Table, we note that there are two (2) documents that are found with the citation 69 N.E.2d 598: the case we cite to, *Hinkle v. Woolpert*, 117 Ind.App. 431, 69 N.E.2d 598 (1946), and *Kretchmer v. State of Indiana*, 329 U.S. 797, 67 S.Ct. 483, 91 L.Ed. 682 (1946); 224 Ind. 559, 69 N.E.2d 598 (1945). It appears that *Kretchmer* was denied transfer by the Supreme Court of Indiana and denied certiorari by the Supreme Court of the United States. *See Kretchmer v. State of Indiana*, 224 Ind. 559, 69 N.E.2d 598 (1945); *Kretchmer v. State of Indiana*, 329 U.S. 797, 67 S.Ct. 483, 91 L.Ed. 682 (1946). However, there is no record of any further action in *Hinkle v. Woolpert*, 117 Ind.App. 431, 69 N.E.2d 598 (1946). Therefore, we assume that *Hinkle* is still valid law.

his son forty (40) acres of land and the residue of his land "to be divided equally amongst all my legal heirs," could not have intended to include his son as his "legal heir" as "giving of this definite portion would seem to exclude the giving of more.").

The College attempts to distinguish the court's holding in *Rusing* by noting that the testator in this case "did not devise the fee remainder to his 'heirs' (plural) but to his 'estate,' which is entirely consistent with there being one heir ( [his daughter] ) under the applicable intestacy statute." (Appellant's Br. p. 17–18). However, in doing so, the College disregards the *Rusing* court's reasoning that the testator could not have intended the named life tenant to also be the taker of the fee simple. In any event, this latter basis seems to us the more compelling, as was illustrated in the case of *Clark v. Payne*, 288 Ky. 819, 157 S.W.2d 63 (1941).

There, the testator left his granddaughter a life estate in certain property. *Id.* at 64. At her death the property was "to descend to her children (if she should have any) then living or to the descendants of such of her children as may then be dead and if she leaves no such issue, then said land ... shall return to my estate." *Id.* The granddaughter never married and left no children. *Id.* at 65. The lower court found that the property went to the granddaughter's heirs at law following her death "to the exclusion of the descendants of the testator's brothers and sisters who would have been his sole heirs at law had he survived his grand-daughter and died immediately after her death." *Id.*

The appellate court reversed. In particular, the court found as follows:

Declining the guidance of precedents tainted with outworn concepts, we encounter no difficulty in giving effect to what it seems to us was the obvious intention of the testator, namely, to make certain, by the use of the language employed, that no part of his estate, ... should pass to strangers to his blood. By devising the property to his granddaughter for life with remainder to her descendants, and providing that if she left no issue it should return to his estate, which we interpret to mean his heirs, the testator clearly did not intend to vest her with the fee ... so that it would become *her* estate and thus descend to *her* relatives. If he had so intended, it is reasonable to presume that he would have so provided, or, at least, have conferred upon her the power of disposition on default of issue. To hold that he limited the estate devised to his granddaughter merely to insure that the corpus would pass to her issue, and that he was indifferent to its disposition in the event she left no issue, would necessitate our ignoring his express direction that the property should return to *his* estate in that event. To hold that this direction meant that the property should pass to strangers to his blood, in the event her next of kin at the time of her death were such strangers, would be to ignore the distinction between "my estate" and "her estate", a distinction which the testator must have had in mind in view of the fact that he had no other lineal descendants and that her next of kin at the time he executed the will were her mother and his stepsons, none of whom he included in his bounty.

*Id.* at 67.

In this case, even were we to find that the real estate vested in the testator's "estate" at his death, we decline to find that the testator intended that his daughter, his sole heir at his death, take the property in fee simple when such an interpretation would clearly contravene the testator's intent as indicated by the will as a

whole. By devising the property first to his daughter's "blood heirs" and, if none, to his estate, the testator intended to ensure that the real estate remained within his blood line. This intent is further evidenced by the absence of a power of disposition, which could have been given to his daughter in the event she had no blood heirs.[3] The testator, however, specifically made provisions in the event his daughter had no blood heirs by requiring that the real estate revert to his estate. To hold that the testator intended his "estate" to include only his daughter at the exclusion of his collateral heirs, thereby giving the daughter a fee simple with all of its rights of disposition, would thwart the testator's intent.

Having found the cases discussed above controlling and persuasive, we need not address the numerous additional arguments raised by the College concerning the testator's intent. "While precedents are valuable aids to courts in the interpretation of wills, they are very rarely conclusive, for in the last analysis the meaning of every will must be determined upon considerations pertaining to its own peculiar facts." *Hackleman v. Hackleman*, 88 Ind.

App. 204, 146 N.E. 590, 592 (1925), *reh'g denied*. Additionally, while we were unable to discover the use of the term "implied exception" in the cases cited by the collateral heirs, we do find that the points of law discussed therein properly support their position and the court's ultimate conclusion that the testator did not intend to include his daughter as his sole heir at law in his estate.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly concluded that the testator did not intend to include his daughter as his sole heir at law in his estate.

Affirmed.

MATTINGLY–MAY, J., and ROBB, J., concur.

---

**3.** For this reason, we find the cases relied upon by the College, in which the court found that the life tenant was vested in the property upon the lapse of a power of disposition, not to be applicable.