## Clark et al. v. Payne.
## Self et al. v. Same.

Oct. 24, 1941.

Troy D. Savage and J. Owen Reynolds for appellants Sarah Mc-Lean Self and others.

Bradley & Blanton, Owen S. Lee, Ed. M. Odear, Robert Odear, C. E. Rankin, Ollie J. Bowen and Ray Meriwether for appellants Edsell Clark, Jr., and others.

Samuel M. Wilson, Wilson & Harbison, I. B. Ross, Gene Lair, D. D. Cline, Neville C. Fisher, John Mayer, Andrew S. Hyman and George Batterton for appellees E. Payne and others.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

The rights of the numerous parties in the proceeds of sale of the 400 acre tract of land involved in this litigation are determinable solely by the proper construction to be placed upon the will of Peter Bramblett probated in the year 1866. Hence, it is unnecessary to refer

to the procedural methods employed by the litigants, or to do other than set forth the terms of the will, the origin of the relationships through which the contesting groups trace their asserted rights to participate, and the conclusions which we have reached. The will:

"I, Peter Bramblett, of the County of Bourbon, State of Kentucky, do make this my last will and testament.

"I devise to my granddaughter, Mollie P. Bramblett, the farm and tract of land in said County whereon her father, Wm. P. Bramblett, deceased, formerly resided containing about 400 acres more or less; also two negro men, Jerry and Henry, and two negro women, Ludy and Rhoda, and Rhoda's four children, which said land and slaves shall be held by her as her exclusive property during her life and at her death to descend to her children (if she should have any) then living or to the descendants of such of her children as may then be dead and if she leaves no such issue, then said land and slaves shall return to my estate.

"I devise to my brother, James Bramblett, the tract of 176½ acres of land which I purchased of George W. Hall, situated in Bourbon County, to him, his heirs and assigns forever.

"After the payment of my debts and one thousand dollars to my executor hereinafter named for his services in settling up my estate, I devise all the rest and residue of my estate, consisting of about 600 acres of land more or less whereon I now reside, all my household and kitchen furniture, slaves, stock, crop, money, notes, debts, claims, demands and choses in action to my wife Polly Bramblett, for and during her life with the privilege and power to devise $5,000.00 thereof in cash to whomsoever she may think proper, and after her death all said estate hereby devised to her shall be sold by my executor hereinafter named who is vested with full power to convey the same to the purchaser or purchasers and the proceeds thereof after deducting the five thousand dollars and the one thousand dollars mentioned herein I devise to be equally divided between my brothers and sisters and their descendants, to wit: To Malinda Young, one equal share;

to Ambrose Bramblett's descendants one equal share. To Elizabeth Mitchell's descendants one equal share and to Susan Smalley's descendants one equal share. I constitute my stepson John Hall executor of this my last will and testament and devise to him the one thousand dollars aforesaid for his services in settling up my estate. The devise made to my granddaughter, Mollie P. and to my brother James in the first or second sect. or clause of my will is all that I intend they shall have or receive from my estate. Out of the estate devised to my wife, my executor shall also retain in his hands after my wife's death a sufficient sum of money to support comfortably my two invalid servants Horace and Clarissa during their lives. It is my will that whenever my servant Jefferson elects to accept his freedom agreeably to the laws of Kentucky, he shall have it after my wife's death and one hundred dollars in cash. Witness my hand this 19th day of July, 1864.

"Peter Bramblett."

Peter Bramblett left no lineal descendants other than his granddaughter, Mollie, whose father, William P. Bramblett, Peter's only son, had died prior to the execution of the will. Polly Bramblett, the mother of William and the widow of Peter, was also the mother of John and Preston Hall, born of a former marriage. Thus, John and Preston Hall, the stepsons of Peter, were half brothers of William, and uncles of the half blood of Mollie. Their descendants, together with the descendants of Mollie's maternal uncle, constituted the heirs at law of Mollie who died in March, 1939, without ever having married. Though not related by blood to the testator, they were adjudged by the Chancellor to be the sole owners of the land in controversy to the exclusion of the descendants of the testator's brothers and sisters who would have been his sole heirs at law had he survived his granddaughter and died immediately after her death. Thus, the major controversy is outlined.

A subsidiary question necessary to be decided in the event of a reversal of the Chancellor's decree is, whether the descendants of the testator's brother, James, are excluded from participation by the residuary clause of the will.

In their learned and lengthy brief appellees' counsel cite our numerous decisions holding that all technical rules of construction must yield to the intention of the testator when that intention is ascertainable from the language employed. Yet, in the absence of tenable reasons for supposing that the testator preferred that his estate should pass to strangers to his blood, rather than to descendants of his brothers and sisters in the event his own line failed, appellees' counsel resort to technical rules to uphold their position.

They contend that the words, "my estate," may not be construed to mean "my heirs," but if so construed, the remainder interest thus created, though "alternative or substitutional," or contingent "with a double aspect," not being a true executory devise, is ineffective as violative of the rule that an inheritance must always be vested in some person or class of persons and cannot rest in nubibus pending the termination of a life estate. In effect, they invoke the common-law rule of "Worthier Title" by insisting that the provision for the return of the property to the testator's estate, in the event his granddaughter left no issue, is not only ineffectual as a remainder, but is void for uncertainty, and that the reversionary interest therein passed to her by the laws of inheritance upon his death. But, as said in the recent case of Mitchell et al. v. Dauphin, Deposit Trust Company et al., 283 Ky. 532, 142 S. W. (2d) 181, 184, in which it is pointed out that this doctrine, in Kentucky at least, is but one of construction:

> "After a careful consideration we are convinced that the doctrine of worthier title serves to hinder, rather than aid, in the ascertainment of the intention of a testator, which is the cardinal purpose in the construction of wills, and that it has no place in our jurisprudence."

The rule that a remainder may not rest in nubibus pending the termination of a particular estate arose out of the common-law theory that the fee must always reside somewhere so that there will always be some one in existence to represent the inheritance in actions brought for its recovery or protection, and appears to be little more than a corollary, or rather, an excuse for the application of the worthier title rule. "Executory devises" and "springing uses" are but pathways around

the technical common-law requirements as to the operation and vesting of remainders and the harsh concepts of the common law which prohibited the alienation of interests not within those concepts and permitted the holder of a life estate to destroy the rights of contingent remaindermen by alienating or surrendering his particular estate. If, because it was preceded by a particular estate, it should be thought necessary to designate the interest passing to the testator's "estate" as a contingent, alternative, or substitutional remainder, rather than as an "executory devise" or "springing use," and to conceive that this remainder vested somewhere upon the death of the testator, this requirement could be met by holding that the remainder vested in a class composed of his then heirs at law, *exclusive of life tenant,* if such was testator's intent, which class might be increased or diminished by the processes of birth and death during the continuance of the particular estate. But the discussion of this academic question may be terminated by the inquiry: If Peter Bramblett had expressly provided in his will that upon his granddaughter's death, without issue, the property devised to her for life should go to his blood heirs then living, would counsel for appellee contend that this Court should refuse to give effect to that provision?

Appellees' counsel also rely on the recognized general principle that where there is a gift over to a class composed of "heirs," "next of kin," or the like, its membership will be deemed to be composed of those who occupy the designated relationship to the testator at the time of his death. They also cite authorities holding that this rule is not rendered inapplicable by the fact that the ascertainment of such a class as of the date of the testator's death, rather than as of the date of the death of the first taker, necessitates the inclusion therein of the latter, despite the fact that his share of the class gift can never vest in possession. It is even said that the fact that the life tenant, as here, was the sole heir presumptive at the time the will was executed, and the only heir at the time of the testator's death, is not alone sufficient to show a contrary intention on the part of the testator, "although it is a circumstance to be weighed with all relevant factors in determining the testator's design, serving, in connection with other circumstances consistent with such a result, to support an in-

ference that the class determination was to be as of the end of the life estate, and, at least where the class gift is an executory devise over after a prior gift in fee, it has been held that the fact that the first taker was the testator's sole heir presumptive and only heir at the testator's death points to a construction ascertaining the class and its membership as of such first taker's death,'' (69 Corpus Juris, page 269, Section 1283). The quoted qualification of the principle contended for militates against its application to the present case, since the granddaughter was the sole presumptive heir of the testator at the time the will was executed and when it became operative. As pointed out in the case of Mitchell et al. v. Dauphin Deposit Trust Company, supra, where many of the authorities bearing upon this subject are discussed and held to be merely declaratory of the rules of construction applied in the effort to ascertain the intention of the testator, ''the effect of a construction that the testator had reference to his heirs at the time of his death would be to convert the estate devised to his daughter [here, granddaughter] into a fee simple, when obviously the testator had no such intention, because the daughter, being the sole member of the class, would take under the executory devise and thereby be vested with a fee simple title under the will.'' And again:

> ''It would seem rather illogical to construe the will to mean that the testator intended to give to his daughter the estate in fee if she survived him and then if the daughter died leaving no issue surviving her to divest her of it in order to give it back to her in fee under the designation of 'heirs at law.' ''

The contention of appellees' counsel that the words ''my estate'' cannot properly be deemed to denote ''my heirs,'' is predicated upon the fact that ''estate'' is usually defined in law as the subject matter with which the grantor deals, or his interest or title in the property, and ''heirs,'' as possible distributees. In other words, one's estate is property, whereas, one's heirs are persons. Many cases are cited holding that it is not permissible to construe the phrases as synonymous, and the distinction between them has been frequently emphasized in justifying the application of the Worthier Title Doctrine. However, there are cases holding to the contrary, but, if there were not, we would nevertheless disregard the technical distinction between the phrases

whenever it became necessary to do so in order to carry out what we believed to be the intention of the testator as manifested by his will as a whole.

Declining the guidance of precedents tainted with outworn concepts, we encounter no difficulty in giving effect to what, it seems to us, was the obvious intention of the testator, namely, to make certain, by the use of the language employed, that no part of his estate, other than the cash bequest to his stepson, John Hall, for his services as executor, should pass to strangers to his blood. By devising the property to his granddaughter for life with remainder to her descendants, and providing that if she left no issue it should return to his estate, which we interpret to mean his heirs, the testator clearly did not intend to vest her with the fee subject to defeasance on default of issue so that it would become *her* estate and thus descend to *her* relatives. If he had so intended, it is reasonable to presume that he would have so provided, or, at least, have conferred upon her the power of disposition on default of issue. To hold that he limited the estate devised to his granddaughter merely to insure that the corpus would pass to her issue, and that he was indifferent to its disposition in the event she left no issue, would necessitate our ignoring his express direction that the property should return to *his* estate in that event. To hold that this direction meant that the property should pass to strangers to his blood, in the event her next of kin at the time of her death were such strangers, would be to ignore the distinction between "my estate" and "her estate," a distinction which the testator must have had in mind in view of the fact that he had no other lineal descendants and that her next of kin at the time he executed the will were her mother and his stepsons, none of whom he included in his bounty.

In reaching our conclusions we have attached no significance to the expressed intention of the testator to limit the shares of his granddaughter and his brother, James, the former, to a life estate in the 400 acres and slaves, and the latter to the 176½ acres devised to him in fee. To sustain either the contention that the heirs of the granddaughter, or that the descendants of James were *thereby* excluded from participation in the 400 acre tract, in the event the granddaughter left no issue, would necessitate our ignoring the relationship between the excluding language and the residuary clause preceding it.

in the same paragraph, which latter obviously had reference only to the 600 acres and other property devised by the testator to his wife for life. It would also involve the rather difficult conception attempted to be rationalized in the application of the Worthier Title Doctrine that one devised only a life estate in property, might, though dead, participate as an heir in the remainder. If it is irrational to suppose that the excluding language was intended to apply to the granddaughter so far as the remainder interest in the 400 acre tract was concerned, it is illogical to include the 400 acres in the estate from which James and his descendants were excluded, since the excluding language applies equally to both. Moreover, we conclude that the naming of the sisters and brothers of the testator whose descendants should take under the specific and limited residuary clause referred to did not vest them or their descendants with any interest in the 400 acre tract devised to the granddaughter for life, since that tract was not included therein but impliedly excluded by the enumeration of the properties intended to be embraced. Hence, they take, not as residuary legatees, but, together with the descendants of James, as the heirs living at the granddaughter's death, to whom, by directing that it should return to his estate, the testator devised the property in the event his granddaughter should die without leaving issue.

It should be noted that the judgment appealed from was entered prior to the rendition of our opinion in the Mitchell case, supra, holding that the doctrine of worthier title was no longer applicable to the construction of wills. Doubtless, the Chancellor was influenced by that doctrine in reaching his conclusions. In any event they were erroneous.

Judgment reversed with directions to enter a judgment in conformity with this opinion.