## Copeland et al. v. State Bank & Trust Co. et al.

June 22, 1945.

George C. Robbins, O. P. Jackson, Bullitt & Middleton and Alvin E. Evans for appellants.

John Noland, Chenault & Parrish and Stoll, Muir, Townsend, Mohney & David for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE TILFORD— Affirming.

Harry Baylor Hanger, a widower, the father of three living children, and the owner of a large estate, died on October 17, 1925, leaving a will which was probated on December 26th of that year. Since the tenth clause and the first two paragraphs of the fifteenth clause of his will, and the second clause of the will of his wife, Elizabeth, who predeceased him, are the main sources of the controversies which gave rise to this litigation, it is necessary that they be here set forth:

### Harry Baylor Hanger's Will

"10th. I will, devise and bequeath to my daughter Elizabeth Hanger for and during her natural life and at her death to her children the balance of land owned by me on Tates Creek Pike and containing one hundred and nine (109) acres more or less being the remaining land in the farm bought by me from W. E. Luxon after deducting one hundred (100) acres devised in paragraph nine (9) to my son W. Arnold Hanger the one hundred and nine acres (more or less) going to my daughter Elizabeth Hanger faces on Gogins Lane. In the event my said daughter Elizabeth Hanger dies without leaving children of her body capable of inheriting then in that event the property hereinabove devised to her and her children is to revert to my estate and be divided equally among my other children. It had been my expectation to give my other son W. Arnold Hanger all the Luxon farm of 209 acres but his mother in her will March 17th 1920 gave W. Arnold two parcels of land containing one hundred and four acres (more or less) which should belong to the property his Mother gave to his sister Elizabeth Hanger and now in order that my daughter Elizabeth may possess and own nearly as many acres as her brother Arnold, I have given to her the part of the Luxon Farm above described wishing that Arnold and Elizabeth may have some working arrangement about the use of this property in other words for Elizabeth to use the one hundred and four acres coming to Arnold from his

mother and Arnold to use the (109). One hundred and nine acres Elizabeth received from me.''

"15th. All the residue of my estate I will devise and bequeath to my executors in trust for the use of my son Harry B. Hanger Jr., and my daughter Elizabeth Hanger and their children according to the provisions hereinafter contained. The said residue shall be held in trust by my executors in a fund to be known as Hanger Estate and the income devised therefrom after payment of taxes and necessary expenses shall be paid quarterly or semi-annually as collected to my son Harry Baylor Hanger Jr., and to my daughter Elizabeth Hanger equally during their lives. If my son Harry B. Hanger Jr., upon arrival at the age of forty years (40) or within one year thereafter so elects; there shall be paid to him outright from the Hanger Estate created by this clause, one fourth ($\frac{1}{4}$) being one half ($\frac{1}{2}$) of his interest in said residuary trust. If my son Harry B. Hanger Jr. so elect, and does withdraw said one fourth my trustee will thereafter pay three fourths of the net income received from said estate quarterly or semi-annually as collected to my daughter Elizabeth Hanger and one fourth of same to my son, Harry B. Hanger Jr., during their lives. If my son Harry B. Hanger Jr. does not elect to withdraw the said one-fourth ($\frac{1}{4}$) of said fund within one year after his arrival at forty years of age the payment of one half ($\frac{1}{2}$) of the net income thereof to him and one half ($\frac{1}{2}$) to my daughter Elizabeth Hanger shall continue as long as they live. Upon the death of either leaving children the trustee shall continue to pay the portion of each of the net income from said fund as is being received by such deceased one at his or her death to the children of such one until the youngest of such children shall reach the ages of twenty one (21) years at which time the trust as to that part shall cease and such part shall be divided equally by my trustee among the then such living children the descendant of any that may be dead to take the share of their dead parent.

"If either Harry B. Hanger Jr. or Elizabeth Hanger die without leaving children, the proportion of this fund being enjoyed by either of them at the time of their respective deaths shall revert to my estate and be distributed by my trustees among my heirs at law, according to the Kentucky Statute of Distribution and Descent. * * *''

## Elizabeth Arnold Hanger's Will

"Second: I will devise and bequeath to my daughter Elizabeth Hanger for and during her natural life and at her death to her children, the home place in Madison County, Kentucky, now occupied by me, containing approximately 450 acres of land, it being all the land owned by me between the Richmond and Lexington turnpike on the north and the Tates Creek turnpike on the south excepting two small parcels containing respectively 57 acres and 37 acres the same being mentioned herein in another paragraph. I will devise and bequeath to my said daughter Elizabeth Hanger for and during her natural life, and at her death to her children, the farms inherited by me from my father known as the Red House farm which contains about 200 acres the same being located in Madison County, Kentucky, on the Red House pike. In the event my said daughter Elizabeth Hanger dies without leaving children of her body capable of inheriting then in that event the two pieces of property hereinabove described to her and her children are to revert to my estate and be divided equally among my children."

As is apparent from the quoted clauses of the will of Harry Baylor Hanger, two of the three children who survived him were sons, the appellees, Harry B. Hanger, Jr., and W. Arnold Hanger. Elizabeth, the daughter, married the appellant, H. Shelby Elliott, and, having no children of her own, on June 23, 1937, adopted the infant appellant, Elizabeth Shelby Elliott. On January 3, 1944, the daughter, Elizabeth Hanger Elliott, died leaving a will by which she bequeathed all of her estate, with the exception of a few minor articles of personal property, to her husband, who, in turn, assigned to the infant appellant, Elizabeth Shelby Elliott, any and all interest that he might have acquired by virture of his wife's will in the trust fund described in the fifteenth clause of the will of her father and the lands described in clause 2 of the will of her mother.

This litigation was inaugurated by the executors of and trustees under Harry Baylor Hanger's will, and Harry B. Hanger, Jr., and W. Arnold Hanger, individually, through the institution of an action in equity against the executor of Elizabeth Hanger Elliott's will, the infant, Elizabeth Shelby Elliott, and H. Shelby Elliott, in

which was sought a construction of the wills of Harry Baylor Hanger and Elizabeth Hanger Elliott, and an adjudication of the rights of the parties. By answer and counterclaim the administrator with the will annexed of the estate of Elizabeth Hanger Elliott and the guardian ad litem for the infant, Elizabeth Shelby Elliott, denied the allegations in the petition that the land devised to Elizabeth Hanger Elliott for and during her natural life by the tenth clause of Harry Baylor Hanger's will passed on her death to Harry Baylor Hanger, Jr., and W. Arnold Hanger, and that the interest of Elizabeth Hanger Elliott in the trust created by the fifteenth clause of the will of her father terminated at her death and reverted to the estate of Harry Baylor Hanger to be distributed to his two sons. Affirmatively it was asserted on behalf of the infant, Elizabeth Shelby Elliott, not only that she succeeded to the rights of her adoptive mother in the estate of Harry Baylor Hanger, but that she took the land devised to her adoptive mother by Elizabeth Arnold Hanger. The Chancellor adjudged that the adopted infant took nothing under the tenth or the fifteenth clauses of the will of Harry Baylor Hanger or the second clause of Elizabeth Arnold Hanger's will; and that the lands devised therein passed by the terms thereof, on the death of Elizabeth Hanger Elliott, to Harry B. Hanger, Jr., and W. Arnold Hanger, as did likewise the portion of the trust estate created by the fifteenth clause of Harry Baylor Hanger's will, enjoyed by Elizabeth Hanger Elliott at the time of her death. This appeal is from that judgment.

It is insisted in a separate brief prepared by counsel for Elizabeth Shelby Elliott, whom we shall hereinafter refer to as "the infant," that through the enactment by the 1940 Legislature of KRS 405.200 Kentucky exercised its sovereign right to place an adopted child on exactly the same plane or status as a natural child; that as a result the infant "was as legally a child of Mrs. Elliott as if she had been born in lawful wedlock to Mr. and Mrs. Elliott; and therefore was a devisee and legatee under Harry Baylor Hanger's will with the right to take thereunder as a child of Mrs. Elliott, with all the legal consequences and incidents thereto;" and hence, under the fifteenth clause of Harry Baylor Hanger's will, "took an one-half interest in the 'Hanger Estate' exactly as she would have taken if she had been 'born in lawful

wedlock of Mr. and Mrs. Elliott;' '' and finally, ''if (notwithstanding the 1940 Kentucky Adoption Act c, 94) Mrs. Elliott died 'without leaving children' (15th Paragraph), Little Shelby is entitled to one-third of the 'Hanger Estate' as one of Mr. Hanger's 3 'heirs at law according to the Kentucky Statute of Distribution and Descent.' ''

In a brief on behalf of the administrator with the will annexed of Elizabeth Hanger Elliott's estate and the guardian ad litem of the infant signed by other counsel, it is insisted that it was the intention of Harry Baylor Hanger, as gathered from the language of his will, to have his heirs determined as of the date of his death in 1925; that when a gift is made to ''heirs'' or ''heirs at law'' of the testator, the general rule is that they must be determined as of the date of the death of the testator.; that when the testator makes a reference to the statute of descent and distribution, it is the rule almost without exception that the heirs must be determined as of the date of the testator's death, and that all the heirs are included; and that since Elizabeth Shelby Elliott was one of Harry Baylor Hanger's heirs at his death and one of the children of Elizabeth Arnold Hanger at her death, the one-third remainder interest of Elizabeth Hanger Elliott, if this Court should hold that the infant is not a child as contemplated by the wills referred to, would pass to her creditors or her husband under her will, and through the husband's assignment would vest in the infant.

In neither of the above mentioned briefs is it contended that the infant took any portion of the real estate devised by the tenth clause of Harry Baylor Hanger's will, although it is apparent from the pleadings that it was so contended in the Trial Court. The separate brief on behalf of the infant is devoted primarily to the contention that the infant, by virtue of the Adoption Statute of 1940, acquired upon her adoptive mother's death the latter's one-half interest in the trust estate created by the fifteenth clause of Harry Baylor Hanger's will; and, as above indicated, the brief on behalf of the other appellants, while acquiescing in the contentions made in the separate brief on behalf of the infant, is devoted to the assertion that if the Adoption Statute did not render the infant capable of taking under Harry Baylor Hanger's will, she, nevertheless, acquired, by virtue of her

adoptive mother's will and the assignment by the bene-
ficiary thereof, the adoptive mother's one-third interest
which allegedly vested in her as one of Harry Baylor
Hanger's heirs at law determined as of the date of his
death. We shall therefore discuss these contentions
separately and in the order named.

The 1940 Statute, KRS 405.200, is as follows:

"(1) Any child adopted according to this chapter shall
be considered for purposes of inheritance and succession
and for all other legal consequences the natural legiti-
mate child of the parents adopting it.

"(2) A child adopted under this chapter shall
be freed from all legal obligations of maintenance and
obedience to its natural parents, except that where the
adoptive parent of the child is married to a natural
parent of the child the relation of the child to that natural
parent shall not be altered by the adoption, and the rights
and obligations of the natural parent and the adoptive
parent to the child shall be the same as if the child were
the natural child of both the natural parent and the adop-
tive parent."

The previous statute which is repealed, KS 2071, is
as follows: "Any person twenty-one years of age, may,
by petition filed in the circuit court in the county of his
residence, state, in substance, that he is desirous of
adopting a person, and making him capable of inheriting
as heir-at-law of such petitioner; and said court shall
have authority to make an order declaring such person
heir-at-law of such petitioner, and as such, capable of in-
heriting as though such person were the child of such
petitioner; but no such order shall be made if the peti-
tioner be a married man or woman, unless the husband
or wife join in the petition."

Under the statute last quoted it had been established
by decisions of this Court that an adopted child could
not take from either the ancestor, the collateral kindred,
or the natural children of the foster parents, and hence,
that an adopted child is not entitled on the death of an
adoptive parent to take property limited by will to the
children, issue, or heirs of the body of such parent, unless
the intention that the adopted child shall so take appears
from language of the will. Merritt v. Morton et al., 143
Ky. 133, 136 S. W. 133, 33 L. R. A., N. S., 139; Savells

et al. v. Brown's Guardian et al., 187 Ky. 134, 218 S. W. 462; Woods v. Crump et al., 283 Ky. 675, 142 S. W. 2d 680; Sanders et al. v. Adams et al., 278 Ky. 24, 128 S. W. 2d 223; Parke v. Parke's Ex'r, 295 Ky. 634, 175 S. W. 2d 141. Counsel for the infant insist that KRS 405.200 was intended as, and in effect constituted, a legislative overruling of Sanders et al. v. Adams et al., supra, and in support of their contentions heretofore set forth cite twenty-one cases from other jurisdictions, many of which involve the intestate succession of property under statutes similar to KRS 405.200. In only three of those which involve wills or deeds were the Adoption Statutes enacted after the effective dates of the instruments, and in none of them was it held that an adopted child takes under a will or deed in which the devise or grant is to the child or children of the life tenant where the adoption statute was enacted subsequent to the effective date of the will or deed. In the present case we are not called upon to determine the effect of the 1940 Act upon the rights of adopted children under wills subsequently executed, but whether its terms affect interests created by wills which became operative prior to its enactment. While the Legislature, by express enactment, could take away the right of the property owner to direct its devolution after his death, we doubt its power, assuming that such was its intention, to nullify the terms of a will previously valid and operative by diverting the benefits thereof to others than the recipients designated by the testator. Yet this would be the effect of the 1940 Adoption Act were we to hold that it compelled a construction of the Hanger wills contrary to the intention of their makers. It would seem clear, therefore, that both reason and accepted rules of construction require that we hold the 1940 Statute to be without effect upon the rights of the present litigants to share in the properties transmitted by those wills, and that those instruments must be construed in accordance with the intention of their makers and the laws in force when they became operative. In short, we are here called upon to construe a will, not a statute. In this conclusion we are supported by the great weight of authority. Brooks Bank & Trust Co. v. Rorabacher, 118 Conn. 202, 171 A. 657; Appeal of Lathem, 124 Me. 120, 126 A. 626; In re Corr's Estate et al., 338 Pa. 337, 12 A. 2d 76; In re Ashhurst Estate, 133 Pa. Super. 526, 3 A. 2d 218; Wyeth et al. v. Merchant et al., D. C., 34 F. Supp. 785, affirmed 8 Cir., 120 F. 2d 242;

Jenkins v. Jenkins, 64 N. H. 407, 14 A. 557; Munie et al. v. Gruenewald, 289 Ill. 468, 124 N. E. 605; Stout v. Cook et al., 77 N. J. Eq. 153, 75 A. 583.

This brings us to a consideration of the contention of the administrator of Elizabeth Hanger Elliott's estate and the guardian ad litem that Elizabeth Hanger Elliott acquired an interest in the estates of her parents by virtue of their wills which in turn was transmitted by her will to her husband, and by his assignment to the infant.

In support of this contention it is argued that the language employed in the fifteenth clause of Harry Baylor Hanger's will and the second clause of Elizabeth Arnold Hanger's will is compatible with the belief, if not indicative of the fact, that the makers did not intend to exclude all persons other than their two sons of their descendants from participation in the shares devised to their daughter in the event she died without leaving surviving her a child of her body.

The contrast between the language employed by Harry Baylor Hanger in the fifteenth clause of his will and that used by him in the tenth clause is pointed to as indicating that while he clearly intended that his real estate should remain in the blood line, he was indifferent as to the disposition of his daughter's share of the trust estate following her death, and wished to put it in her power to dispose of one-ninth of his estate. A similar argument is advanced respecting the use by her mother of the words "my children" rather than "my other children" in designating those who should finally take the real estate devised in the second paragraph of her will if the daughter should die "without leaving children of her body," emphasis being laid upon the fact that the testatrix in the third paragraph of her will, in directing the ultimate disposition of the land devised to her son, Arnold, for life, stated that in the event he died "without leaving children" it should revert to her estate and be "divided equally between my other children." By the fourteenth paragraph of his father's will W. Arnold Hanger is bequeathed outright certain valuable securities, and by the fifteenth paragraph Harry B. Hanger, Jr., on attaining the age of forty years, is given the privilege of withdrawing from the trust estate one-fourth thereof, and these facts also are emphasized as indications that the testator was indifferent to the ultimate disposition of his personal property. It is further argued

that had he intended to control, following the death of either, the share of the trust estate allotted to his daughter or the share allotted his son, Harry B. Hanger, Jr., he would have directed that the share of the one so dying should be added to his or her already created trust estate, and that the testator's direction that their shares, in the event they died without leaving children, "shall revert to my estate and be distributed by my trustees among my heirs at law according to the Kentucky Statute of Distribution and Descent," meant that upon the happening of such contingency he was willing "to let the law take its course."

As a preliminary to the application of artificial rules of construction it is asserted that Elizabeth Hanger Elliott acquired the same interest in the properties of her father and mother that she would have taken had their wills merely devised to her the interests in dispute "for life and at her death to her children," in which event, under many authorities, the remainder would have passed as intestate property to the makers' heirs at law, determined as of the dates of their deaths, including the life tenant. It is also argued that the daughter, by the terms actually employed in the fifteenth paragraph of the will of her father, acquired an interest in remainder which vested at the death of the testator since the heirs were then fully identifiable. Appellees, on the other hand, contend that the remainder interest created by the fifteenth paragraph was contingent, and in such a state of case the members of the class which takes are determined as of the date of the death of the life tenant and could not include her. Many authorities are cited in support of each contention, but we find it unnecessary to review them, since we are committed to the rule that the intention of the testator, as manifested by the language of the will as a whole, must control, regardless of rules of construction such as those referred to. In the case of Mitchell et al. v. Dauphin Deposit Trust Co. et al., 283 Ky. 532, 142 S. W. 2d 181, 182, which involved the construction of a will providing "If my daughter shall die without children or descendants then the estate herein devised for her use and benefit shall go to my heirs at law as the same would descend from me," we said:

"It would seem rather illogical to construe the will to mean that the testator intended to give to his daughter the estate in fee if she survived him and then if the

daughter died leaving no issue surviving her to divest her of it in order to give it back to her in fee under the designation of 'heirs at law.' ''

''After a careful consideration we are convinced that the doctrine of worthier title serves to hinder, rather than aid, in the ascertainment of the intention of a testator, which is the cardinal purpose in the construction of wills, and that it has no place in our jurisprudence.''

In Clark et al. v. Payne, 288 Ky. 819, 157 S. W. 2d 63, 67, which involved the ultimate disposition of land devised to a granddaughter for life with remainder to her children to descendants with the provision that if she left no such issue it should return to the testator's estate, we again declined to apply the rules of construction contended for, and, in holding that the property went to his heirs, determined as of the date of the granddaughter's death, said: ''To hold that he limited the estate devised to his granddaughter merely to insure that the corpus would pass to her issue, and that he was indifferent to its disposition in the event she left no issue, would necessitate our ignoring his express direction that the property should return to his estate in that event.''

Appellants distinguish the case of Mitchell et al. v. Dauphin Deposit Trust Co., supra, from the case at Bar by pointing out that by the use of the word ''then'' in the phrase ''If my daughter shall die without children or descendants then the estate herein devised for her use and benefit shall go to my heirs at law'' the testator directed that the ''heirs'' should not be determined until the end of the life estate. They express the view that the decision was strongly influenced by the fact that the testator added to the phrase above quoted the words ''as the same would descend from me.'' They also call attention to the fact that the Court indicated that where the first taker has a life estate there is more reason to determine the heirs as of the date of the death of the testator than when the first taker has a defeasible fee. They seek to distinguish both Mitchell et al. v. Dauphin Deposit Trust Co. et al., supra, and Clark et al. v. Payne, supra, from the case at Bar by noting that in each of the cases cited the first taker was the testator's sole heir, whereas in the case at Bar there were three; and they call attention to the fact that a majority of the states still follow the ''worthier title'' rule even where the first

taker is the testator's only heir at the time of his death, although a few refuse to apply it when such is the case. But they overlook the fact that this Court by these opinions refused to recognize any rule of construction as being of controlling importance where the accomplishment of the task of ascertaining the testator's actual intention was not aided thereby. See also Skiles et al. v. Bowling Green Trust Co. et al., 294 Ky. 211, 171 S. W. 2d 235.

In the present case we have no difficulty in determining that Harry Baylor Hanger did not intend to include among his heirs a stranger not in existence when he made his will, when the effect of such inclusion would be to divert one-half of the large trust estate, which he had created for the benefit of two of his children, from the survivors. True, no one insists that he actually intended an adopted child of his daughter to take as one of his heirs, the argument of counsel for the infant being that the 1940 Adoption Statute supplied this deficiency by arbitrarily making the adopted child one of his heirs, while counsel for the administrator of the daughter's estate contend that Harry Baylor Hanger, as well as his wife, devised to the daughter an interest which, though it was limited by the terms of their wills to a life estate, became upon her death without leaving children, the equivalent of an estate in fee subject to any disposition she chose to make of it, notwithstanding the provisions of her father's will that her share in the trust estate, if she died without leaving children, should revert to his estate and be distributed among his heirs, and the provision of her mother's will that if she, the daughter, died without leaving children of her body, the real estate devised to her should revert to the mother's estate and be divided equally among her children. But the result which would ensue, if we should hold that the father's "heirs" and the mother's "children" who were to take in the event the daughter died without leaving children should be determined as of the dates of the parents' deaths and hence include the deceased daughter, is sufficient to outweigh any argument for the application of the rules of construction contended for which could be predicated upon the employment by the father, in the fifteenth paragraph of his will and by the mother in the second paragraph of her will, of less restrictive language than they used in other paragraphs. An examination of

the wills indicates that the makers inadvertently used certain words and phrases such as "children" and "children of her (his) body" to express the same meaning; and whatever may have caused the variations in wording on which counsel for the daughter's administrator place much reliance, we do not believe that they reflect an intention on the part of the makers to bring about the result contended for. Harry Baylor Hanger may have been less concerned about the ultimate disposition of his personalty than he was about the ultimate disposition of his real estate, but this does not warrant the conclusion that he was willing that a child adopted by one of his children should take the share of the adoptive parent, if he or she died without issue, in preference to his other children or their descendants.

It is an almost universal rule that when provision is made in a will for the child of some person other than the testator, an adopted child is not included, unless there is language in the will or circumstances surrounding the testator which make it clear that the adopted child was intended to be included; and the fact that the adoption was subsequent to the testator's death raises a grave presumption against an intention to include such adopted child. Generally the terms "heirs" and "issue," as well as "children" and words of similar import in a will, refer to natural or blood relationships and do not include an adopted child in the absence of circumstances clearly showing that the testator so intended; and we perceive no reason for assuming that Harry Baylor Hanger contemplated that a child adopted by one of his own heirs at law should take upon the death of the adoptive parent. See the exhaustive annotation in A. L. R. vol. 70, beginning at page 61; the annotation supplementing it in A. L. R. vol. 144, beginning at page 670; and Woods v. Crump et al., supra.

When Harry Baylor Hanger and his wife executed their respective wills it was not within the power of any other individual, by adoption or otherwise, to make a stranger a beneficiary thereunder, and their daughter was a young woman who, for aught the record shows to the contrary, might have been expected to marry and have children of her own. Viewing this case from every standpoint, we are unable to reach a conclusion other than that arrived at by the Chancellor, and accordingly, the judgment entered by him is affirmed.