# Hanger et al. v. Hanger et al.

June 17, 1947.

Rehearing denied November 21, 1947.

William J. Baxter, Judge.

John Marshall, Jr., Peter, Heyburn & Marshall, George C. Robbins and Ross, Ross & Bayer for appellants.

J. J. Greenleaf for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

This action is a sequel to Copeland et al., v. State Bank & Trust Co., et al., 300 Ky. 432, 188 S. W. 2d 1017, wherein we held that appellant, Harry B. Hanger, Jr., on the death of his sister, Elizabeth Hanger Elliott, became the owner of one-half of his sister's portion of a trust created by the will of their father, Harry B. Hanger, Sr. Martha Shelby Hanger is the divorced wife, and Margaret Hanger Harrison and Jean Hanger Lawrence are the daughters, of H. B. Hanger, Jr., and have instituted this action against him to enforce certain benefits allegedly due appellees under Paragraph 10 of an agreed judgment entered in 1935 in an action brought in the year 1934 by appellee, Martha Shelby Hanger, against appellant, Harry B. Hanger, Jr., upon a separation agreement executed by the parties a few weeks before their divorce in the year 1932. To properly understand the question involved it will be necessary for us to review the events leading up to the agreed judgment.

Harry Baylor Hanger, survived by three children to whom we will refer as Harry, Arnold and Elizabeth, died October 17, 1925. His will was probated on December 26 of that year. Harry and Martha Shelby, to whom we will refer as Martha, were married July 31, 1918; their first child, Margaret, was born in 1920, and their

second, Jean, was born in 1925. By the ninth and tenth clauses of his will Harry Baylor Hanger devised to Arnold and Elizabeth life interests in certain real estate. By the fourteenth clause he bequeathed to Arnold certain specific stocks. By the fifteenth clause he bequeathed the residue of his estate to his Executors, Harry, Arnold, and State Bank & Trust Company, of Richmond, Kentucky, in trust for the use of Harry, Elizabeth, and their children, directing the residue to be held in trust in a fund to be known as the Hanger Estate, and that the net income therefrom be paid quarterly or semiannually as collected to Harry and Elizabeth equally during their lives. The clause contained the following provision:

"If my son Harry B. Hanger, Jr., upon arrival at the age of forty years (40) or within one year thereafter so elects; there shall be paid to him outright from the Hanger Estate created by this clause, one-fourth (¼) being one-half (½) of his interest in said residuary trust."

The testator then prescribed the proportions in which, if Harry withdrew the one-fourth, the income from the remaining three-fourths should be divided between Harry and Elizabeth, and directed that the income should continue to be equally divided between Harry and Elizabeth in the event that Harry failed to withdraw the one-fourth. The testator then directed that, upon the death of either Harry or Elizabeth, the Trustees should pay their proportion of the net income of the trust to the children, if any, surviving them until the youngest of such children should arrive at the age of twenty-one years, at which time the trust should cease as to that part and such part should be divided equally between the children of such deceased one or the descendant of any such child that may be dead at that time. In Copeland et al. v. State Bank & Trust Co. et al., supra, we held that an adopted daughter of Elizabeth did not take under this provision of the will. That decision gives full force and effect to the following provision in Clause 15:

"If either Harry B. Hanger, Jr., or Elizabeth Hanger die without leaving children, the proportion of this fund being enjoyed by either of them at the time of

their respective deaths shall revert to my estate and be distributed by my trustees among my heirs at law, according to the Kentucky Statute of Distribution and Descent.''

Harry and Martha separated in September, 1929, and entered into a separation agreement whereby Harry agreed to pay Martha the sum of $1,000 per month for the support of herself and the children. Harry's share of the distributable income of the Hanger Estate amounted to the sum of $22,565.92 for the year 1929. This income was greatly reduced after the stock market crash of 1929, and in September, 1930, Harry reduced the payments to Martha to $500 per month. Shortly thereafter Martha filed suit to enforce the payment of the amount stipulated in the 1929 contract; at that time Harry was quite ill and the suit finally was dismissed without prejudice. In January, 1932, the parties entered into a second separation agreement which purported to settle all property rights and differences existing between them. By this contract Harry agreed to pay $600 per month to Martha for the support and maintenance of herself and the children, and directed the State Bank & Trust Company, as Trustee of the Hanger Estate, to pay this amount directly to Martha so long as she remained unmarried and to charge it to the income distributable to Harry from the estate so long as he should live. Harry additionally agreed to designate Martha the irrevocable beneficiary of insurance policies in the face amount of $35,000 which he carried on his life. The Bank was directed to pay the premiums on the policies and to charge them to Harry's part of the distributable income of the estate. He likewise agreed to pay an additional Thousand Dollars per year for four years for the higher education of each of his daughters; these payments likewise were to be made by the trustees and charged to Harry in the distribution of income from the estate. The parties further stipulated that the agreements contained in the contract were to be in full satisfaction of all rights either had or might have in the property of the other incident to or arising out of the marital relationship or otherwise. The three Trustees of the Hanger Estate endorsed their acceptance of the agreement in writing. On the twenty-second day of January, 1932, Harry filed an action

against Martha in which he asked for a divorce on the ground of abandonment which, uncontested, was granted on February 18, 1932. Pursuant to the 1932 separation agreement the Bank paid Martha $600 per month until May 10, 1933, when it was reduced to $450, and continued until May, 1934, on which date the Bank discontinued all payments, acting on directions from Harry. In the meantime, to-wit, February 21, 1934, Harry became forty years of age, and on March 20, 1934, elected to withdraw one-fourth, being one-half of his interest in the corpus of the Hanger Trust Estate. On July 10, 1934, Martha filed another action against Harry in the Madison Circuit Court. The Trustees in their fiduciary capacities were made defendants. Therein she sought to compel the resumption of the $600 monthly payments; asked judgment for the amount in arrears under the contract; asked that she be granted a lien on the income from the Hanger Estate for all sums due or to become due; and prayed for an injunction prohibiting Harry from withdrawing any portion of the Hanger Estate. In that action was entered the agreed judgment of October 22, 1935, Paragraph 10 of which gave rise to the controversy of this action.

To arrive at a proper construction of Paragraph 10 of the agreed judgment it will be necessary for us likewise to notice Paragraph 4 of the judgment; they read:

"4. Harry B. Hanger, Jr., hereby agrees, covenants, and guarantees that one-half of the net income from the Hanger Estate * * * shall be distributed under the terms of this judgment for and during the life of Harry B. Hanger, Jr., and/or the life of Elizabeth Hanger Elliott so that plaintiff and her children will receive one-fourth of the entire net income of the Hanger Estate."

(The Hanger Estate is referred to in Paragraphs 1 and 2 as the Trust Estate created in Clause 15 of Harry Baylor Hanger's will).

"10. In the event of the death of Elizabeth Hanger Elliott, the income going to Harry B. Hanger, Jr., shall be equally divided between Harry B. Hanger, Jr., and Martha Shelby Hanger for her benefit and the benefit of her children as above set forth."

It is the contention of appellees, and was decided by the Chancellor, that Paragraph 10 assigns to appellees one-half of the income from the corpus of the Hanger Estate which descended to Harry upon the death of Elizabeth, and this in addition to one-half of the income from Harry's share of the Hanger Estate which was assigned under Paragraph 4. It is contended by appellants that Paragraph 10 was inserted in the judgment for the sole purpose of insuring against a reduction in the income assigned to Martha and the children under Paragraph 4 (one-fourth of the Hanger Estate) if and when the corpus of the Hanger Estate should be reduced by distribution of the portion theretofore enjoyed by Elizabeth to Harry Baylor Hanger's heirs (Arnold and Harry) upon the death of Elizabeth.

In construing contracts the primary purpose of the Court is to determine the intention of the parties at the time and place the contract was made, and if surrounding circumstances throw light on such intention the Court will consider them; and where the subject matter of the contract to be interpreted is the same as that of an earlier one, the Court may compare the two to ascertain the situation of the parties as it may throw light upon their intention at the time of entering into the second agreement. Williston on Contracts, Vol. 3, Sec. 628, pp. 1801-1804. In Bullock v. Young, 252 Ky. 640, 67 S. W. 2d 941, 946, the Court said:

"The leading object in every case is to ascertain and effectuate the intention of the parties, and to do so, the language used, the subject-matter, and the purpose or design of the contract may be considered. * * * If it is ambiguous, it must be construed so as to give effect to the intention of the parties as expressed by the contract in the light of the circumstances inducing and attending its execution. * * *"

Under Clause 15 of the will the income derived from the corpus was to be paid in equal proportions to Eliza- and Harry so long as they both should live, unless Harry elected to withdraw one-fourth of the corpus upon arriving at the age of forty years, in which event his share of the income was to be reduced proportionately. Upon the death of either, unsurvived by children, the portion of the corpus from which he or she had been

receiving the income automatically would revert to the heirs of the creator of the trust. When Elizabeth died the heirs were Arnold and Harry, each of whom was entitled to receive outright one-half of Elizabeth's portion of the corpus. Thus the trust estate automatically was reduced by approximately fifty per cent, or $600,000, and the income therefrom automatically was reduced in the same proportion. Paragraphs 4 and 10 of the agreed judgment deal exclusively with income from the corpus of the Hanger Estate; neither purports to deal with the corpus of the estate. Under Paragraph 4 Martha and the children were assigned, not one-half of Harry's income from the estate, but one-fourth of the whole, to be deducted from Harry's share. This wording would have effected a reduction in the assigned income in the event Elizabeth should predecease Harry; but that hazard was averted by inserting Paragraph 10 in the judgment. Thus by the wording of Paragraphs 4 and 10 Martha and the children would receive the income from securities in the approximate value of $300,000 so long as Harry should live, irrespective of the happening of any contingency which would alter the proportion of income Harry should be entitled to receive from the securities remaining in the Trust Estate. The agreed judgment (contract) was entered in a suit to enforce the 1932 contract. The rights of the parties as fixed by the 1932 contract was the subject matter of the action. That contract did not purport to, nor is it now contended that it did, deal with the corpus of the Hanger Estate distributable to Harry upon the death of Elizabeth, nor the income therefrom. It seems to us unlikely that the parties intended the judgment to embrace the disposition of property or income therefrom which was not included in the subject matter of the action. We are of the opinion that the language of the agreed judgment viewed in the light of the circumstances under which it was drafted, manifests the fact that Paragraph 10 was inserted to maintain the level of Martha's income rather than to increase it in the event of the death of Elizabeth.

The judgment is reversed, with directions that it be set aside and that another be entered in conformity with this opinion.