Herbert Hall EDMANDS et al., Appellants,

v.

Mrs. Ida Mae TICE et al., Appellees.

Court of Appeals of Kentucky.

June 20, 1958.

Rehearing Denied June 19, 1959.

Thomas W. Bullitt and Lee Curd Miller, Bullitt, Dawson & Tarrant, Louisville, for appellants.

J. C. McKnight; McKnight & Pryor, J. Craig Bradley, Jr., Bradley & Bradley, Georgetown, for appellees.

CULLEN, Commissioner.

Herbert Hall Edmands and Frank Edmands, alleging themselves to be adopted children of Mary Hall Edmands, claimed title, after her death, to a tract of land in Kentucky which had been devised to her for life, with remainder to "her children, if any." The circuit court adjudged that Herbert and Frank were not entitled to take under the will as "children" of Mary Hall Edmands, and they have appealed.

There was no satisfactory proof of the adoption of Frank Edmands, so as to him the judgment is affirmed summarily. However, there was ample proof that Herbert Hall Edmands was adopted by Mary Hall Edmands in the State of Washington, and this requires our consideration of the question of whether, as an adopted child, he is entitled to take under the will.

The *Kentucky* adoption statute, KRS 199.530(2), provides, in part:

"Any child adopted pursuant to the provisions of KRS 199.470 to 199.520 shall be considered, for purposes of inheritance and succession and for all other legal considerations, the natural, legitimate child of the parents adopting it. * * *"

The *Washington* statute, Section 26.32.-140 of the Revised Code, provides, in part:

"By a decree of adoption * * * the child * * * shall be, to all intents and purposes, and for all legal incidents, the child, legal heir, and lawful issue of his or her adopter or adopters, entitled to all rights and privileges, including the right of inheritance and the right to take under testamentary disposition, and subject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock. * * *"

The appellees contend that the Kentucky statute is not applicable, because by its express terms it applies only to children adopted in Kentucky, and that the Washington statute cannot be operative to govern the devolution of Kentucky real estate under a will. However, in Pyle v. Fischer, 278 Ky. 287, 128 S.W.2d 726, this Court adopted what is stated to be the majority rule, that "the status acquired by adoption in one state will be recognized in another, and the rights of the child to inherit will be given effect as to property located in the latter state, provided such rights are not inconsistent with those incident to the status of adoption created in such state, or with the laws and policies of such state." 128 S.W.2d 726. The rights of an adopted child under the Washington statute clearly are not inconsistent with those incident to the status of adoption in Kentucky, nor with the laws and policies of Kentucky. So, under the rule stated in the Pyle case, the status and rights conferred upon Herbert Hall Edmands by the Washington statute would be given effect as to Kentucky property.

In the Restatement of the Law of Conflicts, Section 142, the proper rule is stated to be:

"The status of adoption, created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given by the latter state to the status of adoption created by its own law."

Under the Restatement rule, the Washington adoption would be given the same effect as if it were a Kentucky adoption.

We deem it unnecessary to determine whether we should continue to follow the rule stated in Pyle case, and consider Edmands' status to be controlled by the Washington statute, or to adopt the Restatement rule and consider his status to be controlled by the Kentucky statute, because under either statute he has the same status as a natural child, with the right to take by succession *through* the adoptive parent.

We approach consideration of the main question in the case upon the predication that Edmands has the status and rights conferred by the statutes.

█ The will in question is that of Mary Hall Edmands' father, Buford Hall, who died in 1896. Mary adopted Herbert in 1928, and she died in 1954. The present Kentucky statute, giving an adopted child the same status for all legal considerations as a natural child, was not in force in 1896, an we will assume that the Washington statute was not then in force. However, both were in force when Mary died.

In Major v. Kammer, Ky., 258 S.W.2d 506, this Court held that in determining whether an adopted child comes within a class of remaindermen designated by will to take at the expiration of a life estate, the adoption statute in effect at the expiration of the life estate controls, and not the statute in effect at the testator's death. A contrary holding in Copeland v. State Bank & Trust Co., 300 Ky. 432, 188 S.W.2d 1017, was expressly overruled.

█ In the Copeland case the court had held that the term "heirs," or "issue," or "children," in a will, must be considered as referring to natural or blood relationships, and not to include an adopted child in the absence of circumstances clearly showing that the testator so intended. In the Major

case the rule was reversed, in the light of the present adoption statute, and the proper rule was stated to be that such terms are to be considered as including an adopted child unless a contrary intention is apparent from the language of the will. The same rule had previously been stated, without reference to the Copeland case, in Isaacs v. Manning, Ky., 227 S.W.2d 488, and was later reiterated in Bedinger v. Graybill's Ex'r, Ky., 302 S.W.2d 594.

It is true that in the Isaacs, Major and Bedinger cases the terms in question were "heirs at law" or "legal heirs," [258 S.W.2d 507] rather than "children," but we can see no basis for saying that the word "children" shows a clear intent to exclude an adopted child, but "heirs at law" does not show such an intent. In the Copeland case the terms "heirs," "issue" and "children" were treated as all being subject to the same rule, and when the Copeland case was overruled in the Major case no significance was attached to the fact that the will in the Copeland case had used the word "children" whereas the will in the Major case used the term "heirs at law."

The appellees maintain that when the will of Buford Hall is considered as a whole, it does show clearly an intention to exclude adopted children. Buford had four daughters. He devised one or more tracts of land to each for life. As to three of the daughters, the remainder was expressed as being to "her children and their descendants," while as to Mary it was expressed as being to "her children, if any, and their descendants." Some significance is sought to be attached to the use of "if any" in the reference to Mary's children, but the obvious reason for the use of those words was that the other three daughters were married when the will was written, while Mary was single. If the words "if any" should be taken as an indication of intention to exclude adopted children of Mary, then the interpretation of the will would be that the testator did not want any adopted child of Mary to take, but had no objection to a taking by an adopted child of any of his other daughters. This is not a reasonable interpretation.

The will expressly excluded the husbands of the testator's daughters from ever having any interest in the devised tracts of land, and provided that in the event of the death of any of the daughters "without children" the land devised to her should go to the testator's grandchildren, per stirpes. It is argued that this shows a clear intention of the testator to keep the property within his blood line and to exclude any strangers from taking. We think it shows nothing more than the fact that the possibility of an adoption had never occurred to the testator.

As we understand the rule, an adopted child is not to be excluded from taking under a will merely because the testator had never considered the possibility of an adoption taking place. The language of the will must be such as to show a specific intention to exclude an adopted child. Ordinarily this would require use of such language as "natural children" or some clearly exclusive expression.

It is our opinion that an intent to exclude an adopted child of Mary Hall Edmands from taking as a remainderman is not apparent from the will of Buford Hall, and that Herbert Hall Edmands is entitled to take under the will.

As to Frank Edmands the judgment is affirmed. As to Herbert Hall Edmands the judgment is reversed with directions to enter judgment in conformity with this opinion.

CAMMACK, MONTGOMERY and SIMS, JJ., dissenting.

MONTGOMERY, Judge.

I respectfully dissent because I feel that the principles of Copeland v. State Bank & Trust Co., 300 Ky. 432, 188 S.W.2d 1017, should govern this case.

It is evident from the language of the will that the testator did not contemplate or intend that an adopted child of his child should ever share in his estate. The separate devises to his married daughters contain the language "for her life remainder to her children and their descendants". The devise to the then unmarried daughter contains the language "for her life remainder to her children if any and their descendants". The insertion of the phrase "if any" in the latter devise and its omission in the other three devises are significant. It is indicative of the intent and purpose of the testator that only a child produced by reason of the marriage of his daughter should be included and that adopted children were not contemplated. The use and omission of the phrase evince an intention of the testator that marriage and its natural products, that is, natural children as opposed to adopted children, should benefit from his estate.

This intent is further evident in the succeeding paragraph in which their is a gift over in the event any daughter should die without children. The intent to deny any stranger to his blood a share in his estate is again shown in this paragraph when he specifically provided that no husband of his daughter should take "any estate by the courtesy or as survivor" and provided that the estate devised to the daughter should be her separate estate. Had the testator been able in 1896 to have imagined or envisioned the extent to which the adoption laws would become perverted and the unfortunate result obtained in Bedinger v. Graybill's Ex'r., Ky., 302 S.W.2d 594, in 1957, he, undoubtedly, would have guarded against any such possibility. Had the testator been endowed with the vision of Elijah and the wisdom of Solomon, he still could not have foreseen that a stranger to his blood would share a major portion in his estate. I, therefore, conclude that the judgment of the Chancellor is correct.

CAMMACK and SIMS, JJ., join in this dissent.