Thomas H. MINARY, Jr., et al., Appellants,

v.

CITIZENS FIDELITY BANK & TRUST COMPANY et al., Appellees.

Court of Appeals of Kentucky.

June 9, 1967.

Rehearing Denied Nov. 3, 1967.

James W. Stites, Stites, Peabody & Helm, Louisville, for appellants.

William J. Goodwin, Garner M. Petrie, Frank J. Dougherty, Jr., Louisville, Joseph J. Leary, Frankfort, for appellees.

OSBORNE, Judge.

This is an action for the construction of the will of Amelia S. Minary. The will was executed on the fourth day of April, 1932. After making several bequests of cash to various beneficiaries to pass immediately, the will creates a trust, the income of which is directed to be paid to Thomas J. Minary, husband of Amelia Minary and to her three sons, James S. Minary, Thomas Helm Minary, and Alfred D. Minary. The proceeds of the trust are to be paid in the "absolute and uncontrolled discretion" of the trustees. The trust terminates upon the death of the last surviving beneficiary, and upon termination, the corpus is to be distributed as follows:

> "After the Trust terminates, the remaining portion of the Trust Fund shall be distributed to *my* then surviving heirs, according to the laws of descent and distribution then in force in Kentucky, and, if no such heirs, then to the First Christian Church, Louisville, Kentucky."

The testatrix died in 1932 and her husband died in 1935. Left surviving Thomas were two children, Thomas H. Minary, Jr., and Amelia Minary Gant. James and Alfred, the other two sons, died without issue. After testatrix's death, Alfred married Myra Galvin Minary in 1934 and, prior to his death in 1959, he adopted her as his child. The adoption resulted in litigation before this court. See Minary v. Minary, Ky., 395 S.W.2d 588.

The question herein presented is, "Did Alfred's adoption of his wife Myra make her eligible to inherit under the provisions of his mother's will?" More specifically, the question is, "Is Myra included in the term 'my then surviving heirs according to the laws of descent and distribution in force in Kentucky?'"

This has revived a lively question in the jurisprudence of this state and presents two rather difficult legal problems. The first being under what conditions, if any, should an adopted child inherit from or through its adoptive parent? We have encountered little difficulty with the problem of inheriting from an adoptive parent but the question of when will an adoptive child inherit through an adoptive parent has given us considerable trouble. As late as 1945 in Copeland et al. v. State Bank and Trust Company et al., 300 Ky. 432, 188 S.W.2d 1017, we held without hesitation or equivocation that the words "heirs" and "issue" as well as "children" and all other words of similar import as used in a will referred ony to the natural blood relations and did not include an adopted child.

In 1950, in Isaacs v. Manning et al., 312 Ky. 326, 227 S.W.2d 418, we adopted the contrary position and held that an adopted child was included in the phrase "heirs at law" wherein a will devised property to designated children and then upon their death to their heirs at law. In the course of the opinion, we said, "where no language [shows] a contrary intent * * * an adopted daughter clearly falls within the class designated." In this case we distinguish the Copeland case, supra.

In 1953, in Major v. Kammer et al., Ky., 258 S.W.2d 506, we again held that an adopted child was included in the term "heirs at law," basing our decision upon the legislative changes made in the adoption laws and overruling Copeland v. State Bank and Trust Company, supra. In Edmands v. Tice, Ky., 324 S.W.2d 491, which was decided in 1959, we held that where testator used the word children, an adopted child could inherit through an adopted parent the same as if heirs at law or issue had been used.

At this point in the evolution of the question in our court we seem to have accomplished a complete 180° turn from the position which we held in 1945 in Copeland v. State Bank and Trust Company, supra. However, our agonies did not cease here, for in 1965 in the case of Wilson v. Johnson, Ky., 389 S.W.2d 634, we overruled Edmands v. Tice, supra, holding that where the word "children" was used in a will the

testator uses it in its natural sense or "he is thinking of and [intending] to use the word in its commonly accepted meaning," and thereby restricts the class to those persons who are actually born of the parent or if adopted, were adopted as children.[1]

■ From the foregoing we conclude that when Amelia S. Minary used the phrase, "my then surviving heirs according to the laws of descent and distribution then in force in Kentucky," she included the adoptive children of her sons. This leaves us with the extremely bothersome question of: "Does the fact that Myra Minary was an adult and the wife of Alfred at the time she was adopted affect her status as an 'heir' under the will?" KRS 405.390 provides: "An adult person * * * may be adopted in the same manner as provided by law for the adoption of a child and with the same legal effect * * *."

KRS 199.520 provides:

"From and after the date of the judgment the child shall be deemed the child of petitioners and shall be considered for purposes of inheritance and succession and for all other legal considerations, the natural, legitimate child of the parents adopting it the same as if born of their bodies."

It would appear from examination of the authorities that the adoption of an adult for the purpose of making him an heir has been an accepted practice in our law for many years. However, here it should be pointed out that the practice in its ancient form made the person so adopted the legal heir of the adopting party only. This court has dealt with the problem of adopting adults for the purpose of making them heirs on several occasions. In Woods v. Crump, 283 Ky. 675, 142 S.W.2d 680, a grantor by deed conveyed certain property to his daughter during her natural life then to her "heirs" for the consideration of natural love and affection. The deed was executed in 1893. In 1933, approximately forty years

after the execution of the deed and after the death of the grantor, the grantee and her husband adopted appellant Woods, who was then an adult 32 years of age, as their heir. We held that appellant could not take the property as an heir of his adoptive parents, that he could inherit "from" them but not "through" them. However, in the course of the opinion we did not distinguish between the rights of an adopted adult and those of an adopted child. Therefore, the result probably would have been the same had the appellant been an infant when adopted. In the course of the opinion we stated:

"We, therefore, see that in ascertaining the intention of the creator of the estate not only may the title paper which he executes be considered, but also the terms of the statute under which the adopted child was made heir by its foster parent should also be weighed, and whensoever it appears that it was not the intention of the one executing the conveyance to embrace adopted children or heirs they will not be permitted to inherit or take title from or through foster parents under a conveyance by a stranger to the adoption contract."

We further stated, to hold otherwise would be to

"empower and authorize her, not only to convert her life estate into practically a fee simple title, but to select by contract the one to take the title after her death as grantee in remainder under the deed of her parents who plainly contemplated no such result, nor were they parties to the contract of adoption. * * * in accord that an adopted child inherits from its foster parents, but does not inherit through such parent from the latter's natural heirs, unless the local adopting statute so provides, or it is plainly the intention of the creator of the title that it should do so."

In 1957, in Bedinger v. Graybill's Executors, Ky., 302 S.W.2d 594, we had before us

---

1. Here the adopted parties were step children, both adults at the time of adoption.

a case almost identical to the one here under consideration. In that case Mrs. Lulu Graybill, in 1914, set up a trust for her son Robert by will. She then provided after the death of the son that the trust "be paid over and distributed by the Trustee to the heirs at law of my said son according to the laws of descent and distribution in force in Kentucky at the time of his death." There was a devise over to others in the event that Robert died without heirs. Robert having no issue adopted his wife long after his mother's death. We held that the wife should inherit the same as an adopted child, there being no public policy against the adoption of a wife. However, it will be noted that in the course of the opinion it is carefully pointed out that the will directed the estate be paid to the "heirs at law of Robert" and did not provide that the estate should go to "my heirs," "his children" or to "his issue," indicating by this language that if the phrase had been one of the others set out the results might have been different.

In Wilson v. Johnson, Ky., 389 S.W.2d 634, a mother devised her estate to a son Leslie and directed that at the termination of the trust the principal should be divided "equally between the children of Leslie living at that time." Leslie had no issue. He adopted two children of his wife, by a former marriage, who were both adults at the time of the adoption. In holding that the adopted parties could not inherit under the provisions of the trust, we pointed out that the intent of the testator when using the word "children" was to exclude all but children. However, in the course of the opinion we acknowledge that an adult may be adopted in the same manner as a child but stated, unequivocally, that by virtue of that fact "he does not ipso facto become a child." In this case there is no doubt but what the adopted parties were excluded because they were adults at the time of the adoption.

In Pennington v. Citizens Fidelity Bank and Trust Company (Ky.1965) 390 S.W.2d

671, the appellant was adopted by his wife, Annie, when he was 74 years of age. After her death, he asserted a claim to the estate of her mother, whose will devised the remainder to the "child, or children of my daughter, Annie." Here, we again held that the adopted spouse could not claim under the status of child or children and cited Wilson v. Johnson, supra.

This case could properly be distinguished from Bedinger v. Graybill's Executors, supra, on the basis of the difference in language used in the two wills, however, no useful purpose could be served by so distinguishing them. The time has come to face again this problem which has persistently perplexed the court when an adult is adopted for the sole purpose of making him or her an heir and claimant to the estate of an ancestor under the terms of a testamentary instrument known and in existence at the time of the adoption. Even though the statute permits such adoption and even though it expressly provides that it shall be "with the same legal effect as the adoption of a child," we, nevertheless, are constrained to view this practice to be an act of subterfuge which in effect thwarts the intent of the ancestor whose property is being distributed and cheats the rightful heirs. We are faced with a situation wherein we must choose between carrying out the intent of deceased testators or giving a strict and rigid construction to a statute which thwarts that intent. In the Bedinger case there is no doubt but what the intent of the testatrix, as to the disposition of her property, was circumvented. It is our opinion that by giving a strict and literal construction to the adoption statutes, we thwarted the efforts of the deceased to dispose of her property as she saw fit.

When one rule of law does violence to another it becomes inevitable that one must then give way to the other. It is of paramount importance that man be permitted to pass on his property at his death to those who represent the natural objects of

his bounty. This is an ancient and precious right running from the dawn of civilization in an unbroken line down to the present day. Our adoption statutes are humanitarian in nature and of great importance to the welfare of the public. However, these statutes should not be given a construction that does violence to the above rule and to the extent that they violate the rule and prevent one from passing on his property in accord with his wishes, they must give way. Adoption of an adult for the purpose of bringing that person under the provisions of a preexisting testamentary instrument when he clearly was not intended to be so covered should not be permitted and we do not view this as doing any great violence to the intent and purpose of our adoption laws.

For the foregoing reasons the action of the trial court in declaring Myra Galvin Minary an heir of Amelia S. Minary is reversed.

The judgment is reversed.

All concur.